972 P.2d 676

**In re the Marriage of Richard O. GUTIERREZ, Petitioner– Appellant,**

v.

**Adelita GUTIERREZ, Respondent– Appellee.**

**No. 1 CA–CV 97–0420.**

Court of Appeals of Arizona, Division 1, Department E.

Sept. 15, 1998.

Review Denied Feb. 23, 1999.

Van Norman & Van Norman, P.C. By Shawn Friend, Scottsdale, for Petitioner–Appellant.

Cohen & Fromm, P.C. By Bruce R. Cohen and Stephen R. Smith, Phoenix, for Respondent–Appellee.

Ulrich, Kessler & Anger, P.C. By Paul G. Ulrich and Donn G. Kessler, Phoenix, for Respondent–Appellee.

GARBARINO, Judge.

¶ 1    Richard Gutierrez appeals contending that the trial court erroneously found that he had wasted a portion of the parties' community retirement account.  He also appeals the award of lifetime spousal maintenance to his wife, Adelita Gutierrez, and the order that he pay her attorneys' fees.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2   The parties were married for nineteen years. During the marriage, Richard worked as a car painter and presently earns approximately $70,000.00 per year. Adelita began working five years after the parties were married and currently works part-time as a teacher's aide earning $7.94 per hour. She is also the guardian of her minor nephew and mentally disabled niece.

¶ 3   During the marriage, Richard contributed to an employee retirement account from which he withdrew approximately $62,-000.00. He deposited these funds into an account in his name only. Adelita claims that Richard wasted this money and that she neither had access to it nor knew how he spent it. Richard claims that he withdrew the money with Adelita's consent and that they both spent the money on everyday household expenses.

¶ 4   After a one-day bench trial, the trial court found Richard had wasted the money that he had withdrawn from the community retirement account. The court awarded Adelita the $104,000.00 remaining in the account. In addition, the court awarded her $20,000.00 as an equalizing payment to compensate her for what would have been half of the present value of the retirement account had Richard not withdrawn and wasted approximately $62,000.00. The court also awarded Adelita lifetime spousal maintenance based on her lack of skills, her inability to increase her earning ability, and her inadequate financial resources. The court also ordered Richard to pay Adelita's attorneys' fees. The amount of the fee award, $8,000.06, was set forth in a separate, subsequent judgment. The court filed a final, signed order on June 4, 1997, from which Richard filed a timely notice of appeal.

## STANDARD OF REVIEW

¶ 5   The trial court's apportionment of community property will not be disturbed on appeal absent an abuse of discretion. *See Hrudka v. Hrudka,* 186 Ariz. 84, 93, 919 P.2d 179, 188 (App.1995). We view the evidence in the light most favorable to sustaining the trial court's findings and determine whether there was evidence that reasonably supports the court's findings. *See Mitchell v. Mitchell,* 152 Ariz. 317, 323, 732 P.2d 208, 214 (1987).

## DISCUSSION

### I.   *Waste of Community Asset*

¶ 6   We first address Richard's withdrawal of approximately $62,000.00 from the community retirement account. The trial court concluded that Richard had wasted these funds. The trial court is specifically authorized to consider excessive or abnormal expenditures and the concealment or fraudulent disposition of community property when apportioning community property. *See* Ariz. Rev.Stat. Ann. (A.R.S.) § 25–318(A) (1991); *see also Martin v. Martin,* 156 Ariz. 452, 458, 752 P.2d 1038, 1044 (1988); *Hrudka,* 186 Ariz. at 93, 919 P.2d at 188. Richard argues that this Court should presume that any expenditures made during the marriage were for community obligations. He analogizes this "presumption" to the long-accepted presumption that debts incurred during marriage are presumed to be community debts, unless there is clear and convincing evidence to the contrary. *See Hofmann Co. v. Meisner,* 17 Ariz.App. 263, 267, 497 P.2d 83, 86 (1972). That presumption, which is primarily intended for the benefit of creditors, should not apply where one spouse has made a prima facie showing of abnormal or excessive expenditures. Here, Adelita made such a prima facie showing because Richard withdrew a large amount of money without her knowledge and apparently spent it in a manner unknown to her, but from which she never discerned a community benefit.

¶ 7   The spouse making the withdrawals should bear the burden of showing that the money was spent to benefit the community. *See Troutman v. Valley Nat'l Bank of Arizona,* 170 Ariz. 513, 517, 826 P.2d 810, 814 (App.1992) ("The party who asserts a fact has the burden to establish that fact."). We hold that the spouse alleging abnormal or excessive expenditures by the other spouse has the burden of making a prima facie showing of waste. It is then the burden of

the spending spouse to go forward with evidence to rebut the showing of waste because all of the evidence relative to the expenditures is generally within the knowledge, possession, and control of the spending spouse.

¶ 8   Richard suggests that the trial court's findings do not support a finding of waste because he was not dishonest. The statute applies, however, to "excessive or abnormal expenditures." A.R.S. § 25–318(A). Dishonesty is not a prerequisite. In *Lindsay v. Lindsay*, 115 Ariz. 322, 329, 565 P.2d 199, 206 (App.1977), *overruled on other grounds*, *Schroeder v. Schroeder*, 161 Ariz. 316, 323, 778 P.2d 1212, 1219 (1989), the husband sold a community asset without the wife's knowledge and lost the proceeds gambling. The court found that the wife was entitled to her share of the proceeds of the sale of the community asset. *See id.* Similarly, here, Richard withdrew approximately $62,000.00 from the community retirement account without Adelita's knowledge, and he was unable to explain with any specificity how he had spent such a large sum of money. Absent a reasonable explanation, the trial court did not abuse its discretion in finding that Richard's expenditures were excessive and abnormal and did not benefit the community.

¶ 9   The evidence reflected that Richard withdrew $37,311.45 on one occasion and $25,005.15 on a second occasion. Richard claimed that Adelita knew that he had withdrawn the money. Adelita denied this, testifying that she authorized only a $13,000.00 withdrawal to pay for a new roof on the parties' cabin. She testified that she did not know how the money was spent. Given Adelita's testimony that the only authorization she had given was for the $13,000.00 withdrawal, the evidence supports the trial court's conclusion that Richard spent the funds without her knowledge or permission.

¶ 10   Richard claimed the evidence established that he had spent the money on community expenses. He asserts that he bought a truck, repaid loans from his sister, bought furniture, and took vacations. The evidence showed, however, that Richard paid $19,-905.00 in cash for his truck more than one year *after* he had withdrawn the money from the retirement account. The evidence also showed that the furniture was purchased one year *before* Richard withdrew the money. In fact, during his testimony, Richard conceded that he probably had not spent any of the money on furniture. Adelita testified that the parties only took one vacation since 1992—a trip to Disneyland. While on vacation, they stayed with Richard's parents, and Richard's father paid for most of their meals. The evidence supports the trial court's conclusion that Richard withdrew funds from the community retirement account and then used the funds for purposes other than the benefit of the community.

¶ 11   Richard claims that the evidence does not support the trial court's finding that he repaid $37,000.00 in loans from his sister. Richard admits that he spent the money that his sister loaned to him on drinking and gambling. There was conflicting evidence as to how much Richard owed and how much he had repaid his sister. Richard testified that he had no idea how much he had repaid his sister, but he estimated it was anywhere from $10,000.00 to $16,000.00. His sister claimed that she had loaned him $36,500.00 and that he had repaid her $10,000.00 in August 1992. The trial court found that Richard "may have used $37,000 . . . to repay his sister."

¶ 12   Although the evidence did not support this figure, the error is harmless. Richard withdrew approximately $62,000.00 of community property without Adelita's authorization. He was unable to show that he had spent the money on community expenses. He testified that he had used some of it to repay the loans from his sister, which he admitted should be his separate obligation. Even if he used only $10,000.00 of the retirement funds to repay his sister, he repaid a separate obligation loan with community funds. There was evidence from which the trial court could properly conclude that he had wasted the entire amount and that Adelita was entitled to an award reimbursing her for her interest in the community retirement account.

¶ 13   The evidence in this case was conflicting. We will defer to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence. *See*

*Premier Financial Servs. v. Citibank (Arizona),* 185 Ariz. 80, 85, 912 P.2d 1309, 1314 (App.1995). Reasonable evidence supported the trial court's finding of waste in this case.

## II. *Spousal Maintenance*

¶14  The trial court awarded Adelita lifetime spousal maintenance of $1,000.00 per month between October 1, 1996 and June, 30, 1997, and $1,500.00 per month thereafter unless she remarries. We review the trial court's award of spousal maintenance for an abuse of discretion. *See In re Marriage of Berger,* 140 Ariz. 156, 167, 680 P.2d 1217, 1228 (App.1983). We view the evidence in the light most favorable to Adelita and will affirm the judgment if there is any reasonable evidence to support it. *See Thomas v. Thomas,* 142 Ariz. 386, 390, 690 P.2d 105, 109 (App.1984).

¶15  In reviewing a spousal maintenance award, we first consider whether the spouse "meets the statutory requirements for maintenance set out in A.R.S. § 25–319(A). Second, we must review the amount and duration of the award to determine whether the trial court properly considered the factors listed in A.R.S. § 25–319(B)." *Id.*

¶16  The trial court found three of the four factors listed in A.R.S. section 25–319(A) (Supp.1997). Of the three factors found by the court, Richard challenges only the finding that Adelita lacked sufficient property to provide for her reasonable needs. In fact, Richard concedes that Adelita may be entitled to some maintenance. *See* A.R.S. § 25–319(A)(1).

¶17  The statute provides that spousal maintenance may be awarded where any one of the four factors is present. *See* A.R.S. § 25–319(A); *see also Elliott v. Elliott,* 165 Ariz. 128, 136, 796 P.2d 930, 938 (App.1990). The trial court found that Adelita was unable to support herself through appropriate employment, that the parties had a long marriage (19 years), and that Adelita's age (49) and skill level precluded her from gaining employment adequate to support herself. These findings by themselves justify the award of spousal maintenance. *See* A.R.S. § 25–319(A)(2) and (4).

¶18  Richard's argument appears to be directed at the permanency of the award. He argues that Adelita has sufficient financial resources, including marital property apportioned to her, to meet her needs. *See* A.R.S. § 25–319(B)(9). The trial court awarded Adelita the parties' retirement account, valued at $104,000.00, and $20,000.00 as an equalizing payment. Although courts may consider non-income producing property in determining whether a spouse has sufficient property to meet his or her needs, *see Deatherage v. Deatherage,* 140 Ariz. 317, 320, 681 P.2d 469, 472 (App.1984), a court need not require a spouse to exhaust a retirement account to support himself or herself. *See Thomas,* 142 Ariz. at 391, 690 P.2d at 110.

¶19  In *Deatherage,* the trial court awarded the wife land worth $172,000.00 and did not consider it in determining spousal maintenance. 140 Ariz. at 320–21, 681 P.2d at 472–73. On appeal the court reversed, finding that the trial court should have considered the wife's total properties, income producing as well as non-income producing, which would have produced the money that she needed for support. *Id.* at 321, 681 P.2d at 473. Here, the trial court awarded Adelita a retirement account and $20,000.00. When a spouse is awarded money in a retirement account, that spouse "should not be expected to live off both the principal, and interest, exhausting whatever financial reserves she possesses to the extent that when she no longer had any earning capacity there would be nothing left upon which she could draw." *Thomas,* 142 Ariz. at 391, 690 P.2d at 110.

¶20  The evidence supports the trial court's finding that Adelita lacked sufficient property, including property apportioned to her in the decree, to provide for her reasonable needs. She should not be compelled to withdraw the money in the retirement account to supplement her modest income.

¶21  Richard also argues that there was no evidence upon which the trial court could base a spousal maintenance award because there was no evidence of Adelita's standard of living during the marriage. However, the record reflects that Adelita provided the trial court with a budget reflect-

ing her average monthly expenses, including expenses that she anticipated incurring when she purchased a house. She hoped to buy a house comparable to the house in which she had lived during the parties' marriage. Although some of the budgeted expenses were projections based on the purchase of a house, Adelita was incurring similar expenses, such as utilities and rent. There was sufficient evidence of Adelita's current and past standard of living upon which to base the spousal maintenance award.

¶ 22   Richard claims that the trial court erred in failing to consider that Adelita voluntarily reduced her earning capacity by assuming the guardianship of her minor nephew and mentally retarded niece. It appears that the trial court gave specific consideration to this factor and, upon stipulation by Adelita's attorney, attributed a full-time income to Adelita even though she only works twenty-nine hours a week. It was Richard's contention that Adelita could further her education if she had not voluntarily assumed this guardianship duty. There was no evidence that Adelita could increase her earning capacity with further training or education, however. Richard's citation to *Shaughnessy v. Shaughnessy*, 164 Ariz. 449, 451, 793 P.2d 1116, 1118 (App.1990), is misplaced. In *Shaughnessy*, the husband had a proven earning ability, which he had voluntarily reduced by taking early retirement. *See id.* By contrast, in this case, Adelita is working at her highest potential and, although she only works part-time, the trial court attributed full-time wages to her.

¶ 23   Additionally, Richard claims that Adelita can seek to modify the decree in the future if she is unable to secure a better job. Richard's claim that Adelita could earn more is no more than speculation. There is no evidence that there are higher paying jobs available. A maintenance award "cannot be based upon mere hopes and speculative expectations." *Thomas*, 142 Ariz. at 391, 690 P.2d at 110. Richard may seek a modification if Adelita ever does secure a higher paying position. *See Rainwater v. Rainwater*, 177 Ariz. 500, 504–05, 869 P.2d 176, 180–81 (App.1993). The trial court has the discretion to place the burden of proving

changed circumstances on either party. *Id.* at 505, 869 P.2d at 181.

¶ 24   We recognize that one purpose of spousal maintenance is to aid one's ex-spouse for a limited time period while he or she achieves financial independence. *See Schroeder*, 161 Ariz. at 321, 778 P.2d at 1217. The trial court retains the discretion, however, to award indefinite maintenance when it appears "that independence is unlikely to be achieved." *Rainwater*, 177 Ariz. at 503, 869 P.2d at 179. Here, the trial court found that Adelita was unable to work more than twenty-nine hours a week at her current job, that she did not work full-time or further her education because of her guardianship duties, and that she was working at the top of her skill level. The court also considered the duration of the marriage (19 years) and that Richard had discouraged Adelita from seeking employment or education during the marriage. The court was entitled to give consideration to the "counterweights to the goal of promoting mutual financial independence." *Hughes v. Hughes*, 177 Ariz. 522, 524, 869 P.2d 198, 200 (App.1993). There was no abuse of discretion.

¶ 25   Richard claims that Adelita did not contribute to his educational or earning opportunities. This is not a relevant factor in this case, and the trial court did not err by failing to consider this factor. *See Elliott*, 165 Ariz. at 131 n. 1, 796 P.2d at 933 n. 1 (concluding that A.R.S. section 25–319(B) did not require the trial court to make a specific finding regarding each listed factor before awarding spousal maintenance).

¶ 26   Richard also argues that the trial court erred by failing to consider his expenses when making its spousal maintenance award to Adelita. However, Richard did not present any evidence of his expenses. His financial affidavit, although filed with the court, was not admitted into evidence, and, therefore, the trial court could not consider it. *See In re Marriage of Kells*, 182 Ariz. 480, 484, 897 P.2d 1366, 1370 (App.1995) ("[F]iling of a spousal affidavit with the clerk of the court in Maricopa County has no evidentiary value in a domestic relations proceeding where child support is contested,

unless the parties agree otherwise or the Maricopa County Local Rules expressly so provide, which they currently do not.").[1]

¶ 27 Richard's ability to meet his needs while paying maintenance is a relevant consideration. *See* A.R.S. § 25–319(B)(4).[2] Evidence of Richard's expenses is peculiarly within his knowledge. Thus, it was his obligation to present evidence of his expenses if he wished to challenge the amount of support that Adelita had requested. *See Troutman,* 170 Ariz. at 517, 826 P.2d at 814; *Healey v. Coury,* 162 Ariz. 349, 354–55, 783 P.2d 795, 800–01 (App.1989) (stating that the burden of proving a fact falls on the party who has peculiar knowledge of that information). Because Richard failed to offer evidence of his expenses, he cannot now complain that the trial court abused its discretion in failing to consider them.

¶ 28 Finally, Richard argues that the trial court erred by taking into consideration Adelita's monthly expense of $63.00 for loans she took out to pay her attorneys' fees, and then also awarding her attorneys' fees. Adelita set forth her expenses in her budget and financial affidavit, both of which were admitted at trial. Richard did not object to either exhibit at trial and did not respond to Adelita's request for attorneys' fees. Therefore, he has waived any objection to the $63.00 monthly expense for Adelita's attorneys' fees. *See Rhue v. Dawson,* 173 Ariz. 220, 230, 841 P.2d 215, 225 (App.1992).

### III. *Attorneys' Fees*

¶ 29 Adelita contends that this Court lacks jurisdiction over Richard's appeal of the attorneys' fees award. The trial court signed a minute entry order resolving most, but not all, of the issues before it. In that order, the court awarded Adelita's attorneys' fees but did not state the amount. The trial court entered a separate judgment for

Adelita's attorneys' fees on November 12, 1996. On June 4, 1997, the court entered the final, signed order resolving all of the outstanding issues. Richard filed a subsequent notice of appeal "from the Orders made and entered in this action culminating in a final order of June 3 [sic], 1997."

¶ 30 Adelita contends that the notice of appeal does not refer to the November 12, 1996 judgment of attorneys' fees and, therefore, this Court lacks jurisdiction to consider that portion of Richard's appeal. We disagree. We liberally construe notices of appeal " 'if the result is neither misleading nor prejudicial to the appellees involved.' " *McKillip v. Smitty's Super Valu, Inc.,* 190 Ariz. 61, 63, 945 P.2d 372, 374 (App.1997) (quoting *Hanen v. Willis,* 102 Ariz. 6, 8, 423 P.2d 95, 97 (1967)). The trial court entered three orders, none of which disposed of all of the issues before it. The trial court awarded Adelita's attorneys' fees without stating the amount in the original minute entry and later entered a judgment setting forth the amount. Even at that point, unresolved issues remained. These issues were ultimately resolved in the last signed order, filed June 4, 1997. Although Richard could have been more specific in stating the orders from which he was appealing, Adelita has not been prejudiced. She included her argument on attorneys' fees in her answering brief.

¶ 31 It is clear that the "final" judgment in this case encompasses the two signed orders and the judgment setting forth the attorneys' fees and costs. When the court signed the June 4, 1997 order, it gave finality to the prior order and judgment regarding attorneys' fees and costs. *See Hill v. Maricopa County,* 190 Ariz. 558, 950 P.2d 1179, 1180 (App.1997). The notice of appeal was sufficient to confer jurisdiction over the appeal from the award of attorneys' fees.

---

1. In his dissent in this case, Judge Hathaway expressly disagreed with the majority, stating, "[t]he trial court appropriately considered the affidavit appellee filed pursuant to MCLR (Maricopa County Local Rules) 6.4(b)." *Kells,* 182 Ariz. at 485, 897 P.2d at 1371. Perhaps the appropriate rules committee should address the apparent confusion regarding the evidentiary value of a spousal affidavit that has been filed with the Clerk of the Court but has not been admitted into evidence.

2. Based on his affidavit, which the court declined to consider, Richard's monthly expenses ($2,509.00) and support obligation ($1,500.00) exceed his net income ($3,868.00) by $141.00 per month.

¶ 32 The trial court has discretion to award attorneys' fees, and we will not disturb that finding absent an abuse of discretion. *See Thomas,* 142 Ariz. at 393, 690 P.2d at 112. Under A.R.S. section 25–324 (Supp.1997), courts have discretion to award attorneys' fees in a divorce case "after considering the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings."

¶ 33 Richard argues that based on the assets and maintenance awarded to Adelita, she was capable of paying her own attorneys' fees. Adelita testified that she did not have, nor would she have after the divorce, any liquid assets from which she could pay attorneys' fees. Indeed, Adelita had to take out loans to pay her attorneys' fees during the pendency of the trial. At least one of the purposes of A.R.S. section 25–324 "is to award fees and costs to the party least able to pay." *White–Nathan v. Nathan,* 181 Ariz. 112, 118, 888 P.2d 237, 243 (App.1994). Throughout the trial, Adelita was the party least able to pay. *See Kelsey v. Kelsey,* 186 Ariz. 49, 54, 918 P.2d 1067, 1072 (App.1996) (finding no abuse of discretion in awarding fees based on a pre-decree disparity in the parties' financial resources).

¶ 34 In awarding attorneys' fees, courts also consider the reasonableness of the parties' positions. *See* A.R.S. § 25–324. Richard argues that the trial court abused its discretion in considering the reasonableness of his settlement offer. Although Richard cites no authority for his position, we assume he is referring to Arizona Rule of Evidence 408. Rule 408 states that evidence of offers to compromise or settle a claim are inadmissible "to prove liability for or invalidity of the claim or its amount." The trial court did not consider Richard's allegedly unreasonable settlement offers for that purpose. Moreover, the possibility of settlement is one of the factors that courts consider when deciding whether to award attorneys' fees under A.R.S. section 12–341.01(A) (1992). *See Wagenseller v. Scottsdale Mem'l. Hosp.,* 147 Ariz. 370, 394, 710 P.2d 1025, 1049 (1985) (finding that in deciding whether to award attorneys' fees under A.R.S. section 12–341.01(A), courts should consider whether the matter could have been settled). Likewise, we hold that the trial court may consider a party's settlement position in determining reasonableness under A.R.S. section 25–324. We find no abuse of discretion in the award of Adelita's attorneys' fees.

¶ 35 Both parties request an award of attorneys' fees on appeal. Because we have affirmed the spousal maintenance award, Richard and Adelita now have relatively comparable financial resources. Neither party took an unreasonable position on appeal. Therefore, each party should bear his or her own attorneys' fees on appeal.

### CONCLUSION

¶ 36 We affirm the trial court's findings. We also affirm the trial court's award to Adelita of lifetime spousal maintenance of $1,500.00 per month and its award of Adelita's attorneys' fees.

SULT, P.J., and KLEINSCHMIDT, J., concur.