NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

DARRYL S.,
*Appellant*,

v.

DEPARTMENT OF CHILD SAFETY, D.S.,
*Appellees*.

No. 1 CA-JV 20-0066
FILED 8-11-2020

Appeal from the Superior Court in Maricopa County
No. JS519078
JD531666
The Honorable Kristin R. Culbertson, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Paul J. McMurdie joined.

---

**M O R S E**, Judge:

¶1 Darryl S. ("Father") appeals the juvenile court's order terminating his parental rights to his child, D.S. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Father and Shatrefa W. ("Mother") are the natural parents of D.S., born December 2017 (the "Child"). Father has a history of child abuse and domestic violence. Father also has a history with the Department of Child Safety ("DCS"), which includes the loss of parental rights to his other children with Mother. Additionally, Mother's rights to her oldest child, not mutual with Father, were severed based on physical and sexual abuse by Mother and Father.

¶3 Soon after the Child was born, DCS put a safety plan in place that allowed Mother in-home custody of the Child, but permitted Father only supervised visits. In April 2018, DCS took the Child into care after it learned that Mother was violating the safety plan by allowing Father to have regular, unsupervised contact with the Child. In May, DCS filed a dependency petition asserting abuse, neglect, and failure to prevent abuse. When Father failed to appear at the dependency hearing, the court proceeded in absentia and found the Child dependent as to Father. DCS eventually placed the Child with a licensed foster-adoptive home.

¶4 During the dependency, DCS offered Father a variety of rehabilitative services to address his domestic-violence and child-abuse issues. In November 2018, Father participated in a psychological evaluation. The psychologist recommended that Father engage in domestic-violence intervention services and parent-aide services to learn how to interact compassionately with the Child. DCS referred Father for domestic-violence counseling in October 2018. However, Father only attended the intake session, missed the remaining nineteen sessions, and was discharged from the service. DCS offered supervised visitation and

provided Father with a case aide to monitor visits, but Father missed some visits and arrived late to others. Visits stopped when Father lost contact with DCS.

**¶5** In October 2018, DCS filed a petition to terminate Father's parental rights to the Child, alleging the grounds of abuse and neglect. In February 2019, DCS amended the petition to add the six-month time-in-care ground.

**¶6** The juvenile court held a one-day trial in December 2019. The case manager testified about Father's history of domestic violence and child abuse, his failure to complete needed services, and that the Child's placement was interested in adopting him and meeting his needs. At trial, Father admitted that he had not completed any domestic-violence or anger-management program. Father denied that domestic-violence services were warranted because he claimed there were no official reports of domestic violence.

**¶7** The court found termination warranted on the abuse and time-in-care grounds. *See* A.R.S. § 8-533(B)(2) and (B)(8)(b). The court also found severance was in the Child's best interests and terminated Father's parental rights. The juvenile court also terminated Mother's parental rights to the Child, but she is not a party to this appeal.

**¶8** Father timely appealed, and we have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

**¶9** To terminate a parent-child relationship, the juvenile court must find that clear and convincing evidence supports one of the statutory grounds for severance. A.R.S. § 8-533(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Additionally, the court must determine by a preponderance of the evidence that termination of the relationship is in the child's best interests. *Kent K.*, 210 Ariz. at 284, 288, ¶¶ 22, 41. We review the court's termination order for an abuse of discretion but review legal issues de novo. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶¶ 8-9 (App. 2004). We accept the court's findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

## I.      Statutory Grounds for Termination.

¶10      Father challenges the juvenile court's finding that the six-month time-in-care ground was proven by clear and convincing evidence. As to the abuse ground, Father asserts that the juvenile court failed to apply the clear and convincing evidence standard.

### A.      Time-in-Care.

¶11      To prove the allegations for the six-month time-in-care ground, DCS had to show that it "made a diligent effort to provide appropriate reunification services" and that:

> The child who is under three years of age has been in an out-of-home placement for a cumulative total period of six months or longer pursuant to court order and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement, including refusal to participate in reunification services offered by the department.

A.R.S. § 8-533(B)(8)(b).  The relevant "circumstances" are those "existing at the time of the severance that prevent a parent from being able to appropriately provide for his or her children." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 96, ¶ 34 n.14 (App. 2009) (quoting *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326, 330, ¶ 22 (App. 2007)).

¶12      The record amply supports, and Father does not dispute, the services offered by DCS, the length of the Child's out-of-home placement, and the Child's age. Instead, Father argues that the juvenile court erred in determining that DCS had shown Father substantially neglected or willfully refused to remedy the circumstances causing the Child to be in an out-of-home placement.  Specifically, Father points to services he allegedly participated in and argues that he established his ability to parent. Substantial evidence supports the juvenile court's findings, and we reject Father's arguments.

¶13      The juvenile court found "the critical underlying issue is Father's abuse of children."  The court noted the importance of counseling with a domestic-violence component "to help Father appropriately parent without resorting to abuse, or failing to protect from the abuse of others." DCS provided Father numerous services, including a domestic-violence counselor, but he attended only one intake session.  The caseworker testified that Father failed to engage in the parent-aide skills sessions, and

failed to complete visitation services. The court described Father's efforts as "woefully inadequate."

**¶14** Father claimed he participated in domestic-violence counseling at Community Bridges and an eight-hour parenting class. However, the caseworker testified that she had contacted Community Bridges and was informed that Father was not involved in anything that involved a domestic-violence component and the court found no credible evidence that the parenting class included any domestic-violence element. Further, the juvenile court expressly found that "Father was not a credible witness." We must defer to this credibility determination. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998) ("We will defer to the trial court's determination of witnesses' credibility and the weight to give conflicting evidence."). Because the record supports the juvenile court's findings, we will uphold them.

### B. Abuse.

**¶15** Father asserts that the juvenile court applied the incorrect legal standard to the abuse ground by relying on an opinion of this Court subsequently vacated by our supreme court. *See Sandra R. v. Dep't of Child Safety*, 246 Ariz. 180 (App. 2019), *aff'd in part, vacated in part*, 248 Ariz. 224 (2020). Because we affirm on the six-month time-in-care ground, we need not address Father's challenges to the abuse ground. *Jesus M.*, 203 Ariz. at 280, ¶ 3.

## II. Best Interests Finding.

**¶16** Terminating a parent-child relationship is in a child's best interests if the child will benefit from the termination or will be harmed if the relationship continues. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018); *see also Demetrius L.*, 239 Ariz. at 3-4, ¶ 12 (finding relevant factors include whether: (1) the current placement is meeting the child's needs, (2) an adoption plan is in place, and (3) the child is adoptable). "[T]he existence and effect of a bonded relationship between a biological parent and a child, although a factor to consider, is not dispositive in addressing best interests." *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 12 (App. 2016).

**¶17** Moreover, "[i]n a best interests inquiry, . . . we can presume that the interests of the parent and child diverge because the court has

already found the existence of one of the statutory grounds for termination by clear and convincing evidence." *Kent K.*, 210 Ariz. at 286, ¶ 35. Once a juvenile court finds that a parent is unfit, the focus shifts to the child's interests. *Id.* at 285, 287, ¶¶ 31, 37. Thus, the court must balance the unfit parent's "diluted" interest "against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. Of foremost concern in that regard is "protect[ing] a child's interest in stability and security." *Id.* at ¶ 34 (citation omitted).

¶18 The juvenile court found that termination would benefit the Child because he needs a safe home "and Father is not likely to provide it." The court also found that the Child is adoptable, the placement was meeting the Child's needs, and planned to "proceed to adoption, which will provide the [C]hild with the added benefit of stability and permanency." Father argues that the court did not consider the totality of the circumstances, particularly his parenting ability, the bond between him and the Child, and his participation in services. But the juvenile court explicitly considered the parental bond, finding that they were "somewhat bonded," and "visits between Father and the [C]hild generally went well." But the court noted that the Child "has been in care most of his life and, has had limited contact with Father." The court also found that "Father is in denial about the severity of the risks to [Child] given his history of violence and unwillingness to acknowledge and address these concerns." Thus, the record supports that the court considered the "totality of the circumstances." *Alma S.*, 245 Ariz. at 148, ¶ 1.

¶19 Finally, Father asserts that the court erred when it considered the risk of abuse in the best interest inquiry. *See Maricopa Cty. Juvenile Action No. JS-500274*, 167 Ariz. 1, 5-6 (1990) (noting that it cannot be assumed a child will benefit from termination just because a statutory ground was proven). But severance may be in a child's best interest if the juvenile court finds "some harm to the child if severance is denied." *Demetrius L.*, 239 Ariz. at 4, ¶ 16. The juvenile court noted Father's history of child abuse, Father's unwillingness to acknowledge these concerns, the risks to the Child given this history, and concluded "it would be a detriment to [the Child] to deny severance." We find no error. *See Sandra R.*, 248 Ariz. at 231, ¶ 32 (affirming best interests finding when reasonable evidence supported that the "severance of parental rights will benefit the children because they require a home environment free of a heightened risk of abuse").

¶20 Thus, the juvenile court did not err in finding termination to be in the Child's best interests.

## CONCLUSION

¶21        For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental relationship with the Child.



AMY M. WOOD • Clerk of the Court
FILED:    AA