NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Marriage of:

CAROLINE J. JOHNSON, *Petitioner/Appellant*,

*v.*

MICAH W. JOHNSON, *Respondent/Appellee*.

No. 1 CA-CV 21-0015 FC
FILED 9-2-2021

Appeal from the Superior Court in Maricopa County
Nos. FC 2018-006544
FC 2018-051540
The Honorable Alison Bachus, Judge

**AFFIRMED**

COUNSEL

Paul D. Nordini, Scottsdale
*Counsel for Petitioner/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Chief Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        Caroline Johnson ("Mother") appeals from the child support award contained in the decree dissolving her marriage to Micah Johnson ("Father"). She challenges the family court's calculation of her gross income for child support purposes.[1] For the following reasons, we affirm.

## BACKGROUND

¶2        After nine years of marriage, Mother and Father separately petitioned for dissolution. The family court consolidated the cases, held a two-day trial on contested issues, and entered a decree of dissolution. Specific to this appeal, after attributing to Mother $100,000 per year in annual income through recurring monetary gifts, the court ordered Mother to pay Father (1) $17,008 in past-due child support, and (2) $1,061 per month in current child support. Mother timely appealed.

## DISCUSSION

¶3        At the time of trial, Mother was unemployed. To determine her gross income for child support purposes, the court averaged Mother's previous salaries to calculate her annual earning capacity ($60,833.33). Mother does not contest this determination, or the court's separate finding that she earns $2,000 annually from business income. Instead, Mother challenges only the court's imputation of an additional $100,000 to her annual gross income based on its finding that she receives substantial, recurring gifts from various third parties.

¶4        "Arizona has adopted the Arizona Child Support Guidelines for, among other things, the purpose of establishing a standard of support for children consistent with their needs and the ability of parents to pay,

---

[1]        Father did not file an answering brief. Although we may treat his failure to do so as a confession of error, in the exercise of our discretion, we instead address the merits of Mother's claim. *See Savord v. Morton*, 235 Ariz. 256, 259, ¶ 9 (App. 2014).

and to make child support awards consistent for persons in similar circumstances." *Cummings v. Cummings*, 182 Ariz. 383, 385 (App. 1994); A.R.S. § 25-320 app. § 1 (the "Guidelines"). "Because the Guidelines are based upon assumptions about spending patterns of families at various income levels, gross income for child support purposes is not determined by the gross income shown on the parties' income tax returns, but rather on the actual money or cash-like benefits received by the household which is available for expenditures." *Cummings*, 182 Ariz. at 385.

¶5 Applying an income sharing model, the Guidelines require each parent to contribute "his or her proportionate share" to "the total child support amount." Guidelines, Background. For purposes of determining each parent's proportionate share, the Guidelines define "gross income" as "income from any source." Guidelines § 5(A). Consistent with this definition, courts "may consider all aspects of a parent's income to ensure the award is just and based on the total financial resources of the parents." *Strait v. Strait*, 223 Ariz. 500, 502, ¶ 8 (App. 2010) (internal quotations omitted). While nonrecurring payments need not be included, and the court generally should not attribute to a parent more income than would be earned from full-time employment, under the Guidelines, gross income includes gifts that are "continuing or recurring in nature." Guidelines § 5(A).

¶6 We review a family court's determination that a particular source of funds factors into a parent's gross income, within the meaning of the Guidelines, for an abuse of discretion. *See Milinovich v. Womack*, 236 Ariz. 612, 615, 617, ¶¶ 7, 16 (App. 2015) (noting the categorization of funds "requires consideration of the Guidelines on a case-by-case basis"). An abuse of discretion exists when the record "is devoid of competent evidence to support the decision." *Jenkins v. Jenkins*, 215 Ariz. 35, 37, ¶ 8 (App. 2007) (internal quotation omitted).

¶7 At trial, Mother acknowledged that she had been gifted substantial sums during the divorce proceedings, explaining that third parties provided the funds to assist her with basic living expenses and legal fees. She denied receiving regular, recurring gifts, however, and testified that she had not received any financial gifts during the preceding six months (ending in March 2020).

¶8 Father, likewise, testified about Mother's third-party gifts. Cataloguing her repeated refusals to comply with discovery requests and her overall failure to disclose the receipt of large financial gifts (Mother's 2020 Affidavit of Financial Information disclosed no gift income), Father

testified that he obtained evidence of the gifts by subpoenaing a financial institution for Mother's account information. The account documents revealed that Mother received more than $256,000 from five men during a two-year period ending in March 2020. According to Father's uncontroverted calculations, Mother received on average nearly $12,000 in monthly third-party gifts from the date she filed for dissolution through March 2020. Moreover, Father also discovered that Mother received numerous non-monetary gifts of substantial value from various men during the same time. Because Mother refused to disclose financial records after March 2020, Father testified that he believed she continued to both receive and hide substantial third-party contributions.

¶9            In its detailed ruling, the family court expressly found that Mother "attempted to mislead" both Father and the court about the gifts she had received. After questioning Mother's credibility, the court noted that Father received financial disclosures concerning Mother's accounts only through March 2020, coinciding precisely with the time Mother testified she stopped receiving gifts from third parties. We do not reassess the credibility of witnesses on appeal, *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998), and in evaluating a potential source of gross income, the family court "need not restrict its view of the evidence to a few isolated months . . . particularly when such income is controlled by the party [her]self and is subject to possible manipulation." *Pearson v. Pearson*, 190 Ariz. 231, 236 (App. 1997).

¶10          While the amounts of the gifts Mother received varied and the timing of the gifts was irregular, the trial evidence supports the family court's finding that men transferred money to Mother when she requested it. Moreover, nothing in the record controverts Father's testimony that Mother maintains a lavish standard of living that far outpaces that afforded by her earning capacity. *See Sherman v. Sherman*, 241 Ariz. 110, 114, ¶ 16 (App. 2016) ("We see no reason under the Guidelines that [a parent] should be able to select one level of expenditures for [her]self while supporting [her] children based on a lower hypothetical income level."). On these facts, and absent any evidence to substantiate Mother's assertion that third parties stopped gifting her money in March 2020, the record supports the inference drawn by the family court, after assessing credibility, that Mother continues to receive substantial gifts from various third parties. Therefore, the family court did not abuse its discretion by attributing the recurring gift monies to Mother as gross income for purposes of calculating her child support obligation.

4

## CONCLUSION

¶11         For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA