NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

GLORIA AGUILAR, *Petitioner/Appellant,*

*v.*

JUAN AGUILAR, JR., *Respondent/Appellee.*

No. 1 CA-CV 21-0052 FC
FILED 10-14-2021

Appeal from the Superior Court in Maricopa County
No. FC2019-004813
The Honorable Monica Edelstein, Judge

**REVERSED AND REMANDED IN PART; AFFIRMED IN PART**

COUNSEL

Alongi Law Firm PLLC, Phoenix
By Thomas P. Alongi
*Counsel for Petitioner/Appellant*

The Sobampo Law Firm PLLC, Phoenix
By F. Javier Sobampo
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Judge Jennifer M. Perkins and Judge Maria Elena Cruz joined.

---

**B A I L E Y**, Judge:

¶1　　　Gloria Aguilar ("Wife") appeals several rulings in the decree dissolving her marriage to Juan Aguilar, Jr., ("Husband"). For the following reasons, we reverse the denial of spousal maintenance, the allocation of Husband's MBMINC retirement account and the $5,500 student loan debt, and remand for further proceedings. In all other respects, we affirm the decree.

## FACTS AND PROCEDURAL HISTORY

¶2　　　The parties were married in 2001, and Wife petitioned for dissolution in 2019. The parties appeared pro per for the one-hour trial. In the decree, the court found that Wife did not qualify for spousal maintenance and divided the community property equally, implicitly rejecting Wife's claim that Husband's excessive gambling constituted waste. The court awarded each party the bank accounts in their name but awarded Husband 100% of all three retirement accounts. The court ordered the parties to sell the marital home and divide the proceeds equally. The court also found that both parties were responsible for the nearly $17,000 student loan debt used for their adult daughter's college expenses, but the second $5,500 student loan was Wife's separate debt.

¶3　　　Wife moved to amend the judgment under Arizona Rule of Family Law Procedure ("Rule") 83. The superior court denied the motion without comment, and Wife timely appealed. We have jurisdiction under A.R.S. § 12-2101(A)(1) and (5)(a).

## DISCUSSION

I.　　Spousal Maintenance

¶4　　　Wife argues the superior court erred by finding that she was disabled and could not work but did not qualify for spousal maintenance under A.R.S. § 25-319(A). We review a ruling on spousal maintenance for

2

an abuse of discretion and will affirm if reasonable evidence supports it. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998).

¶5        When considering a request for spousal maintenance, the superior court must first determine whether the spouse is eligible for an award.  *See* A.R.S. § 25-319(A); *see also In re Marriage of Cotter*, 245 Ariz. 82, 85, ¶ 7 (App. 2018).  In making this threshold eligibility determination, "the court considers *only* the circumstances of the requesting spouse."  *Cotter*, 245 Ariz. at 87, ¶ 7.  If the court finds the requesting spouse is eligible for spousal maintenance, it then determines the amount and duration of any award.  *Id.*; *see also* A.R.S. § 25-319(B).

¶6        The superior court considers five factors when determining whether a spouse is eligible for spousal maintenance.  *See* A.R.S. § 25-319(A).  A spouse is eligible for an award if any one of the five factors is present.  *See Gutierrez*, 193 Ariz. at 348, ¶ 17; A.R.S. § 25-319(A).  Under § 25-319(A)(2), a spouse qualifies for spousal maintenance if they are "unable to be self-sufficient through appropriate employment . . . or lack[] earning ability in the labor market adequate to be self-sufficient."  The court found that Wife was unable to work and was receiving disability benefits.  Although Husband now disputes the extent of Wife's disability, he did not raise this argument at trial.  Therefore, it is waived.  *See Noriega v. Town of Miami*, 243 Ariz. 320, 326, ¶ 27 (App. 2017) (generally, arguments not raised below are considered waived).  Husband's argument also contradicts the court's express finding that Wife is unable to work.  This finding entitles Wife to spousal maintenance.  *See* A.R.S. § 25-319(A)(2); *Gutierrez*, 193 Ariz. at 348, ¶ 17.

¶7        The superior court's finding that Wife qualified for "multiple public assistance programs" does not establish that she is able to be self-sufficient for purposes of § 25-319(A)(2).  The statute directs the court to consider whether a spouse can be self-sufficient through "appropriate employment" or "earning ability in the labor market[,]" not public assistance.  A.R.S. § 25-319(A)(2).  Although the financial resources available to Wife, including public assistance, may be considered in determining the amount of any award, those resources do not necessarily preclude a finding of eligibility for maintenance.  *See* A.R.S. § 25-319(B)(9) (court shall consider "[t]he financial resources of the party seeking maintenance, including marital property apportioned to that spouse, and that spouse's ability to meet that spouse's own needs independently.").

¶8        Contrary to Husband's contention, his lack of income and financial resources have no bearing on whether Wife qualifies for spousal

maintenance under § 25-319(A). *See Cotter*, 245 Ariz. at 85, ¶ 7. That evidence, like public assistance, is relevant when considering the amount and duration of any award. *See* A.R.S. § 25-319(B)(4) ("The ability of the spouse from whom maintenance is sought to meet that spouse's needs while meeting those of the spouse seeking maintenance."), and (5) ("The comparative financial resources of the spouses, including their comparative earning abilities in the labor market."). Because Wife qualified for spousal maintenance under § 25-319(A)(2), we reverse the denial of spousal maintenance and remand for the court to determine the amount and duration of any award.

II.     Husband's Retirement Accounts

**¶9**         The superior court found that an equal division of community property was equitable. However, the court awarded Husband 100% of the three retirement accounts in his name with no offset or equalization payment to Wife. Wife argues this was error. We review the allocation of community property for an abuse of discretion, but the classification of property as separate or community is a question of law we review de novo. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007).

**¶10**         It is unclear why the superior court awarded the retirement accounts to Husband with no offset to Wife. Because neither party requested findings of fact or conclusions of law under Rule 82, we "presume that the [superior] court found every fact necessary to support the judgment." *Berryhill v. Moore*, 180 Ariz. 77, 82 (App. 1994). But we only infer findings of fact and conclusions of law that are reasonably supported by the evidence and do not conflict with any express findings. *Johnson v. Elson*, 192 Ariz. 486, 489, ¶ 11 (App. 1998).

**¶11**         Husband had an Arizona state employee retirement account but spent those funds on living expenses while he was unemployed between September 2019 and December 2020. Husband contributed $1,270 to a retirement account while working at Southwest Key, but he no longer had access to those funds for reasons that are unclear from the record. Husband also contributed $1,177 to a third retirement account while working part-time at MBMINC.

**¶12**         The parties seem to agree that Husband's state retirement account was community property and that he used those funds to pay living expenses such as the mortgage and homeowner association dues on the community home. Wife argues that even though Husband used these community funds for a community purpose, she is entitled to one-half of

those funds. We disagree. Husband spent these community funds to preserve a community asset (the home). This is allowed by statute and does not constitute waste. *Compare* A.R.S. § 25-315(A)(1)(a) (parties may continue to use community property to provide for the necessities of life) *with* § 25-318(C) (in allocating community property, courts may consider a spouse's excessive or abnormal expenditures).

¶13 To the extent that Wife alleges that Husband used those funds for an improper purpose, she failed to make a prima facie showing that he wasted the funds in the state retirement account. *See Gutierrez*, 193 Ariz. at 346, ¶ 7 ("the spouse alleging abnormal or excessive expenditures by the other spouse has the burden of making a prima facie showing of waste."). Thus, Wife was not entitled to an offset for her share of the now nonexistent state retirement account.

¶14 Husband argues that the Southwest Key retirement account is his separate property because he started working there in December 2019, after the petition for dissolution was served. By statute, property acquired after the date a petition for dissolution is served is the separate property of the spouse acquiring it. *See* A.R.S. §§ 25-211(A)(2); 25-213(B). The date of service is unclear. But Wife concedes that it is appropriate to consider the community terminated as of the date Husband responded to the petition, October 31, 2019. Based on Husband's testimony, he began working at Southwest Key after the community terminated, so that retirement account is his separate property. We affirm the ruling awarding Husband 100% of the Southwest Key retirement account.

¶15 The record, however, does not show when Husband worked at MBMINC and contributed to that retirement account. If he worked at MBMINC and contributed to that retirement account during the marriage, those funds are community property. *See Johnson v. Johnson*, 131 Ariz. 38, 41 (1981) (retirement benefits acquired during the marriage are community property subject to equitable division upon dissolution). Because no evidence supports the finding that this account was Husband's separate property, we reverse that ruling and remand for the court to reconsider the MBMINC retirement account.

III.     The Student Loans

¶16 During the marriage, the parties took out two student loans for their adult daughter's college expenses. The superior court found that the $16,958.77 student loan was a community debt and ordered each party to pay half. In contrast, the court found the $5,500 student loan was Wife's

5

separate debt. Wife argues that both loans were community debts. We review the allocation of community debts for an abuse of discretion, but the classification of the debt as separate or community is a question of law we review de novo. *See Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4.

**¶17** The superior court found the $5,500 student loan was Wife's separate debt because it was in her name alone and Husband was unaware of it. These facts do not establish that the loan was Wife's separate debt. A debt incurred during marriage for the benefit of the community is presumed to be a community debt. *Johnson*, 131 Ariz. at 44. Husband had the burden of overcoming this presumption by clear and convincing evidence. *Lorenz-Auxier Fin. Grp. v. Bidewell*, 160 Ariz. 218, 220 (App. 1989).

**¶18** Husband did not show how this debt, unlike the larger student loan, was not a community obligation. Additionally, either spouse can bind the community except in the case of a guaranty or other exceptions not applicable here. *See* A.R.S. §§ 25-214(C); -215(D). Husband did not show that Wife signed the loan as a guarantor. *See* A.R.S. § 25-214(C)(2). Husband also waived his contention that the loan did not benefit the community by raising it for the first time on appeal. *See Noriega*, 243 Ariz. at 326, ¶ 27 (arguments not raised below are generally treated as waived). Thus, the court erred as a matter of law in characterizing this loan as Wife's separate debt. It was a community obligation. Accordingly, we reverse the ruling that the $5,500 student loan was Wife's separate debt and remand for reconsideration.

IV.    The Marital Home

**¶19** The superior court ordered the parties to sell the marital home and divide the remaining equity equally. Wife asked to keep the marital home and pay Husband his share of the equity. The court has broad discretion in allocating community property, and we will not disturb that allocation absent an abuse of discretion. *Boncoskey v. Boncoskey*, 216 Ariz. 448, 451, ¶ 13 (App. 2007). In reviewing the court's allocation, we view the evidence in the light most favorable to upholding the decree and will affirm if reasonable evidence supports it. *Id.*

**¶20** Wife argues the superior court abused its discretion by ordering the sale because she could have qualified for a loan that would have allowed her to buy out Husband's interest in the marital home and Husband did not oppose this. Wife, however, had no significant assets and her only source of income was $960 a month in disability benefits, which she conceded would not cover the mortgage and her living expenses. In

fact, the mortgage and homeowner association dues totaled $718 per month, and the utilities were over $300 per month. Despite Husband's apparent agreement that Wife could buy out his interest in the marital home, the parties did not reach a binding agreement to that effect under Rule 69. Regardless, the court need not accept an agreement that it finds unfair after it considers the economic circumstances of the parties. *See* A.R.S. § 25-317(B). The court did not abuse its discretion by ordering the sale of the marital home given Wife's limited financial resources. We affirm the order to sell the marital home and divide the equity equally.

## V. Waste of Community Property

**¶21** Wife contends the superior court erred by rejecting her allegation that Husband's gambling constituted waste of community property. The court may consider a spouse's excessive or abnormal expenditures or destruction of community property when apportioning community property. *See* A.R.S. § 25-318(C); *Gutierrez*, 193 Ariz. at 346, ¶ 6. Although the decree did not address Wife's waste allegation specifically, it implicitly rejected this argument when it found that an equal division of community property was equitable.

**¶22** Because neither party requested findings of fact or conclusions of law, we presume the court found every fact necessary to support the decree. *Berryhill*, 180 Ariz. at 82. The evidence showed that Husband had a significant gambling habit. Wife also gambled during the marriage—perhaps less than Husband, but she too gambled regularly. On appeal, we do not reweigh the evidence and affirm the superior court's ruling if substantial evidence supports it. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009). Given the evidence that both parties gambled regularly, we cannot say the court abused its discretion by implicitly rejecting Wife's claim for waste.

## VI. Attorneys' Fees and Costs on Appeal

**¶23** Both parties request attorneys' fees and costs on appeal under A.R.S. § 25-324(A). In the exercise of our discretion, we order each party to pay their own attorneys' fees. Neither party is entitled to an award of costs under A.R.S. § 12-342.

## CONCLUSION

**¶24** We reverse the rulings in the decree finding that Wife was not eligible for spousal maintenance, awarding Husband 100% of the MBMINC retirement account, and finding the $5,500 student loan was Wife's separate

debt.  We remand for further proceedings on these issues.  In all other respects, we affirm the decree.



AMY M. WOOD • Clerk of the Court
FILED:    AA