NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

LISA UPSHAW, *Petitioner/Appellee*,

*v.*

MARK WINIKER, *Respondent/Appellant*.

No. 1 CA-CV 21-0727 FC
FILED 9-1-2022

Appeal from the Superior Court in Maricopa County
No. FC2020-003530
The Honorable Suzanne M. Nicholls, Judge

**AFFIRMED**

COUNSEL

Duenas Eden Cravatta, PLC, Phoenix
By Amy Olthouse Duenas
*Counsel for Petitioner/Appellee*

Law Office of Florence M. Bruemmer, PC, Anthem
By Florence M. Bruemmer
*Counsel for Respondent/Appellant*

_____

**MEMORANDUM DECISION**

Presiding Judge Jennifer M. Perkins delivered the decision of the Court, in which Judge James B. Morse Jr. and Judge Michael J. Brown joined.

_____

**P E R K I N S**, Judge:

¶1        Mark Winiker ("Father") appeals the superior court's order awarding sole legal decision-making for his son ("Child") to Lisa Upshaw. The juvenile court terminated Mother's parental rights in October 2017 and she is not a party to this appeal. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Child was born in 2014 and exposed to heroin. The Department of Child Safety ("DCS") removed Child from his parents' care and filed a dependency petition. Upshaw began dating and living with Father in Prescott about seven months later. DCS allowed Upshaw to be Childs's safety monitor and Father's visitation supervisor. The juvenile court dismissed the dependency in January 2016.

¶3        DCS filed another dependency in September 2017, after Glendale police found Father unconscious in his car with Child in the backseat. Father overdosed while the car was running and in drive—Father's foot applied enough brake pressure to keep the car from moving. DCS placed Child with Upshaw, who ended her relationship with Father and moved to a separate apartment in Phoenix. Child primarily lived with Upshaw, and Father eventually received unsupervised visitation with Child on alternating weekends. The juvenile court dismissed the second dependency in October 2018.

¶4        Father relapsed a few months after dismissal of the second dependency. He continued to abuse substances until his then-wife removed him from their home. Father moved back to Prescott for inpatient substance-abuse treatment. Father completed his treatment program and eventually resumed visits with Child on alternating weekends. During one visit, Father told Upshaw that he would not return Child until Father felt "comfortable." Father returned Child to Upshaw two days past their previously anticipated exchange date.

¶5            Upshaw petitioned *in loco parentis* for sole legal decision-making in June 2020. Her petition alleged living in Father's environment was not in Child's best interests because: Father had not parented Child for over four years; he stopped abusing substances less than eight months ago; Child shared a room with Father and his girlfriend; and Child often lacked supervision. Father moved to dismiss Upshaw's petition, arguing she failed to allege Child would suffer a significant detriment if he remained in Father's care, which Arizona law required. The superior court denied Father's motion and held an evidentiary hearing in September 2021.

¶6            Upshaw testified that she is concerned with Father caring for Child because he has suffered frequent substance-abuse relapses. She believes Father threatens Child's stability because Father has had four different jobs and three different residences in a short period. And Father's two former roommates died from drug overdoses, including his girlfriend who supervised Child "several times during the week." Upshaw also testified about her concern for Child's emotional and mental health arising from Father's abrupt decision in July 2021 to move Child from Phoenix to Prescott full-time.

¶7            Father admitted he had unsupervised parenting time with Child after his relapse. He also agreed that watching Child "while [he] was using" was neither appropriate nor safe, but partially blamed Upshaw for allowing Child to "continue to come back to [his] home" while Father abused heroin. Father testified inconsistently about his newfound sobriety, which either began 1.5 years after the October 2018 dependency dismissal or in August 2019.

¶8            A therapist that began seeing Child in June 2021 also testified. She stated the parties sought counseling for Child because he had "challenges self-regulating and adapting to two households" but she did not know whether Father sought counseling to help Child transition to life in Prescott. The therapist recognized the importance of Upshaw's significant, continuing presence but could not answer whether Child's move to Prescott drastically changed Child's life. She believed Child would be safe with Father.

¶9            The superior court issued a detailed, 18-page minute entry granting Upshaw's petition. The court found Upshaw established by clear and convincing evidence that Father would not act in Child's best interests. The court found it would be significantly detrimental for Child to remain in Father's care because of his history of substance abuse and poor decision-making. Although Father provided one clean hair follicle test from July

2021, the court remained concerned about potential relapses because Father provided inconsistent testimony on the dates marking his sobriety. The court also found Father dismissed Upshaw's "significant role" in Child's life, evidenced by his abrupt decision to change Child's living and educational environment. The court found the therapist unqualified to treat Child and did not find her testimony credible. The court further explained that Father would have to demonstrate a minimum of 12 consecutive months of sobriety, a crime-free lifestyle, stable housing, and employment before it "would consider finding Father no longer poses a significant detriment to the Child" to change legal-decision making authority and physical custody.

**¶10** Father timely appealed, and we have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶11** Father challenges the sufficiency of Upshaw's initial petition and argues the record does not support the superior court's findings on the merits of the petition.

### Petition for legal decision-making

**¶12** We will not disturb the superior court's legal decision-making ruling absent an abuse of discretion. *Layne v. LaBianca*, 249 Ariz. 301, 302, ¶ 5 (App. 2020). The court abuses its discretion by committing a legal error or by making findings with insufficient evidentiary support. *Engstrom v. McCarthy*, 243 Ariz. 469, 471, ¶ 4 (App. 2018). We defer to the court's factual findings and credibility determinations, *id.*, but we review the court's interpretation and application of A.R.S. § 25-409 *de novo*. *Chapman v. Hopkins*, 243 Ariz. 236, 240, ¶ 14 (App. 2017).

**¶13** Third parties may petition for legal decision-making authority. A.R.S. § 25-409(A). To avoid summary dismissal, the third party must plead four elements in her petition: (1) she stands *in loco parentis* to the child; (2) it would be significantly detrimental for the child to remain in the legal parent's care; (3) a court has not entered an order concerning legal decision-making within the year preceding the petition; and (4) either one of the legal parents is deceased, the child's legal parents are unmarried at the time of filing, or a divorce proceeding or legal separation of the legal parents is pending at the time of filing. *Id.*

**¶14** Arizona law establishes a rebuttable presumption that "awarding legal decision-making to a legal parent serves the child's best

interests." A.R.S. § 25-409(B). A third party may rebut that presumption if she establishes, by clear and convincing evidence, that "awarding legal decision-making to a legal parent is not consistent with the child's best interests." *Id.*

### Petition Pleading Requirements

**¶15** Father contends the superior court should have summarily denied Upshaw's petition because her hearing testimony about her motivation to file did not relate to Child's significant detriment. Father appears to conflate the petition's initial sufficiency with consideration on the merits. Treating his argument as a challenge to the court's decision not to summarily deny Upshaw's petition, we disagree with his assessment.

**¶16** The initial petition need not contain "uncontroverted evidence of significant detriment," but it must contain sufficient factual allegations that the child will suffer a significant detriment if the child remains in the legal parent's control. *Chapman*, 243 Ariz. at 241–42, ¶¶ 20, 24. While Upshaw's petition did not expressly articulate "significant detriment," it contains sufficient factual allegations to avoid summary denial. A.R.S. § 25-409(A). Upshaw alleged Father struggled with substance abuse and had only recently become sober. Upshaw also alleged that Father's girlfriend, who lived in Father's apartment, also struggled with substance abuse. She stated Child might lack supervision or be taken by Father to his job at a halfway house. Taken together, Upshaw's specific allegations, along with her general claim that Father was not acting in Child's best interests, sufficiently alleged that Child would suffer a significant detriment if left in Father's care. The superior court thus did not err by not summarily denying Upshaw's petition.

### Merits of the Petition

**¶17** "The merits of a third-party's petition for legal decision-making include each of the elements in § 25-409(A) along with the requirement that the third-party rebut the § 25-409(B) presumption." *Hustrulid v. Stakebake*, 1 CA-CV 21-0073, slip op. at *6, ¶ 26 (Ariz. App. Aug. 4, 2022). In deciding the merits, "the court shall give special weight to the legal parents' opinion of what serves their child's best interests and consider all relevant factors." A.R.S. § 25-409(E) (listing five factors).

**¶18** Father challenges the court's findings that he posed a significant detriment to Child, and that Upshaw rebutted the best interests presumption. We take both issues up together, recognizing that "analysis

of significant detriment and best interests will often overlap." *Hustrulid*, 1 CA-CV 21-0073, slip op. at *7, ¶ 28.

**¶19**      The superior court recounted Father's substance abuse history and his lack of housing and employment stability. Father's inconsistent testimony about the duration of his sobriety supports the court's finding that Father's substance abuse history poses a risk to Child's physical health. Father's lone negative drug test supported his claim that he is currently sober. But the negative drug test alone does not overshadow the court's concern for a potential relapse.

**¶20**      Father agreed that drastic changes to Child's life would be detrimental, and Upshaw testified that Child's sudden change in living and educational environment is negatively affecting Child emotionally. The court found Upshaw's testimony credible and suggested Father's testimony was less credible. *See Engstrom*, 243 Ariz. at 471, ¶ 4 (we will not reweigh credibility determinations on appeal).

**¶21**      The superior court detailed each relevant factor under § 25-403(A) and found Upshaw established, by clear and convincing evidence, that it was in Child's best interest for Upshaw to have sole legal decision-making at this time. Father's own testimony shows that Upshaw has been Child's primary caretaker for most of his life. Upshaw testified that Child views her as his mother and her home as his own. Father agreed that she shares a strong bond with Child, who calls her "mom." The court found Child is also closely bonded to Upshaw's family and Upshaw is more likely to allow Child to have frequent, meaningful, and continuing contact with Father. Substantial evidence thus supports the court's findings, and we find no abuse of discretion.

### Attorneys' Fees

**¶22**      Father also challenges the superior court's denial of his request for attorneys' fees. We review a denial of attorneys' fees for an abuse of discretion. *See In re Estate of Ganoni*, 238 Ariz. 144, 147, ¶ 18 (App. 2015). Father sought fees under A.R.S. § 25-324, which allows the superior court to grant fees after considering the parties' financial resources and the reasonableness of their positions. The court found it lacked evidence of the parties' financial resources and both parties acted reasonably.

**¶23**      Father cites *Gutierrez v. Gutierrez* to argue Upshaw's conduct was unreasonable because she refused to participate in face-to-face settlement discussions. 193 Ariz. 343 (App. 1998). He contends Upshaw caused an unnecessary delay by "forcing the parties to a full trial."

¶24      The superior court's March 2021 order set the evidentiary hearing for September 2021. The court also ordered counsel and both parties to meet in-person before trial to discuss settlement. In their joint pretrial statement, the parties stated they attended mediation in April 2021 but reached no agreements. Father emphasized the parties' lack of agreement when he set forth his own position in the pretrial statement. The record shows the parties reached an impasse that only the evidentiary hearing would resolve. The court did not abuse its discretion when it found the parties acted reasonably and denied Father's fees request.

¶25      Both parties request attorneys' fees on appeal. We deny Father's request under A.R.S. § 25-324 because the record does not show a financial disparity exists between the parties and neither party took unreasonable positions on appeal. We deny Upshaw's request because she cited no statute or other authority as a basis to request fees. *See* ARCAP 21(a)(2). Upshaw is entitled to her reasonable costs incurred on appeal, upon compliance with ARCAP 21.

**CONCLUSION**

¶26      We affirm.

