IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

_____

IN RE THE MARRIAGE OF

STUART E. THORN,
*Petitioner/Appellant*,

*and*

SUSAN THORN,
*Respondent/Appellee*.

No. 2 CA-CV 2014-0022
Filed July 17, 2014

_____

Appeal from the Superior Court in Yavapai County
No. P1300DO201100031
The Honorable Kenton D. Jones, Judge

**AFFIRMED**

_____

COUNSEL

The Murray Law Offices, P.C., Scottsdale
By Stanley D. Murray
*Counsel for Petitioner/Appellant*

Slaton & Sannes, P.C., Scottsdale
By Sandra Slaton
*Counsel for Respondent/Appellee*

_____

**OPINION**

_____

Judge Miller authored the decision of the Court, in which Judge Vásquez and Judge Espinosa concurred.

_____

M I L L E R, Judge:

**¶1**　　　　Stuart Thorn appeals from the decree dissolving his marriage to Susan Thorn, arguing the family court erred in dividing real and personal property, ordering him to return Susan's stocks and bonds, and ordering him to repay a loan that had already been paid. For the reasons that follow, we determine we do not have jurisdiction to review the personal property arguments, and otherwise affirm the judgment as to the remaining items.

**Factual and Procedural Background**

**¶2**　　　　We view the facts in the light most favorable to upholding the decree. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, ¶ 5, 972 P.2d 676, 679 (App. 1998). The parties were married in January 1992 after entering into a prenuptial agreement. Although that agreement does not direct the issues on appeal, it documents a variety of separate properties brought to the marriage, many of which maintained their separate character or affected the allocation and distribution of jointly held property. In January 2011, Stuart filed a petition for dissolution of marriage without children. The family court entered a decree of dissolution in April 2013, dividing the parties' property. We have jurisdiction, except as discussed below, pursuant to A.R.S. § 12-2101(A)(1).

**I.　Appellate Jurisdiction over Community Property Distribution**

**¶3**　　　　Stuart argues the family court failed to "make a fair and equitable distribution of community property" because Susan "was awarded all of the community personal property without an equalization payment." This issue was not raised under Stuart's original notice of appeal; therefore, we first must examine whether

we have jurisdiction to consider the court's community property distribution.  *See Baker v. Bradley*, 231 Ariz. 475, ¶ 8, 296 P.3d 1011, 1014-15 (App. 2013) (court has independent duty to determine jurisdiction).

**¶4**　　　　Following the entry of the decree of dissolution on April 25, 2013, Stuart filed a timely notice of appeal on May 10, 2013. Stuart identified five specific orders and rulings in the decree to be appealed.  Thirty-five days after the decree, Stuart filed an amended notice of appeal adding a sixth item to the list of orders and rulings contained in the decree, specifically "[t]he order distributing personal property."  On our own motion, we ordered simultaneous briefing, requesting the parties address whether this court has jurisdiction related to item six.

**¶5**　　　　Rule 9(a), Ariz. R. Civ. App. P., requires a notice of appeal be filed "not later than 30 days after the entry of the judgment from which the appeal is taken."  The failure to file a notice within thirty days deprives the appellate court of jurisdiction except to dismiss the attempted appeal.  *James v. State*, 215 Ariz. 182, ¶ 11, 158 P.3d 905, 908 (App. 2007).  In other words, the timely filing of a notice of appeal is "a prerequisite to appellate jurisdiction." *Wilkinson v. Fabry*, 177 Ariz. 506, 507, 869 P.2d 182, 183 (App. 1992). Accordingly, this court only acquires jurisdiction over those matters identified in a timely filed notice of appeal.  *Lee v. Lee*, 133 Ariz. 118, 124, 649 P.2d 997, 1003 (App. 1982).

**¶6**　　　　Stuart concedes his amended notice of appeal was filed more than thirty days after entry of the decree of dissolution, but argues "that an amended notice of appeal relates back to the filing date of the original notice of appeal."  Stuart relies on Rule 34(A), Ariz. R. Fam. Law P., and several out-of-state cases to support this contention and characterizes his notice of appeal as a "pleading" under Rule 34(A).  Stuart offers no authority for the proposition that Rule 34 either trumps or extends Rule 9(a).  To the contrary, where two rules deal with the same subject, the more specific rule controls. *See Pima Cnty. v. Heinfeld*, 134 Ariz. 133, 134-35, 654 P.2d 281, 282-83 (1982) ("where two statutes deal with the same subject, the more specific statute controls"); *Sierra Tucson, Inc. v. Lee ex rel. Cnty. of Pima*, 230 Ariz. 255, ¶ 16, 282 P.3d 1275, 1279 (App. 2012) ("We

interpret procedural rules according to the same principles we apply to the interpretation of statutes.").   Rule 9(a) is more specific and applies directly to notices of appeal, whether original or amended.

**¶7**        We also find unpersuasive the out-of-state cases cited by Stuart. None of them stands for the proposition that an untimely amended notice of appeal confers jurisdiction upon the reviewing court.  *See Chan v. Chan*, 748 P.2d 807, 811-12 (Haw. Ct. App. 1987) (husband   timely filed five amended notices of appeal, each appealing from orders entered after previous notice of appeal was filed); *In re Marriage of Betts*, 558 N.E.2d 404, 415 (Ill. App. Ct. 1990) (appellant's failure to list orders appealed by original notice of appeal in subsequent amended notice of appeal did not bar appeal of those orders); *Herman v. Hamblet*, 401 N.E.2d 973, 977 (Ill. App. Ct. 1980) ("While an appellant may amend a notice of appeal . . . such an amendment may not be used to avoid the requirement that a subsequent order be timely appealed.").

**¶8**        Stuart further contends that "amended notices of appeal have been recognized and indeed encouraged in a number of published appellate cases."   We agree that amended notices of appeal have been recognized and at times implicitly encouraged, particularly when the initial notice of appeal was premature, rendering it a nullity.  *See generally Craig v. Craig*, 227 Ariz. 105, ¶ 13, 253 P.3d 624, 626 (2011); *In re Marriage of Kassa*, 231 Ariz. 592, ¶¶ 5-6, 299 P.3d 1290, 1292 (App. 2013).   The case law cited by Stuart, however, does not stand for the proposition that this court has jurisdiction to review rulings identified in an untimely amended notice of appeal.  For instance, in *Engel v. Landman*, 221 Ariz. 504, ¶ 14, 212 P.3d 842, 847 (App. 2009), the initial appeal was premature because the notice of appeal had been filed while a motion for new trial was pending, but a timely supplemental notice of appeal conferred jurisdiction.   There was no timely supplemental notice here.

**¶9**        Stuart's reliance on *Craig* also is unavailing.   We agree that the court ostensibly suggested that a supplemental notice might have cured the problem caused by the parties' failure to wait for the family court to rule on a time-extending motion before filing their original notices.  *Craig*, 227 Ariz. 105, ¶¶ 2, 6-8, 253 P.3d at 624, 625.

More telling, the court approved the parties' post-appeal decision to file a stipulated motion pursuant to Rule 85(C)(1)(f), Ariz. R. Fam. Law P., to reinstate the final judgment, which would permit the parties to file "fresh notices of appeal." *Id.* ¶ 16. There is no indication in this record that Susan would stipulate to a new judgment that would allow Stuart to file a timely notice.

**¶10** We conclude that because the amended notice of appeal was untimely filed, we lack jurisdiction to consider Stuart's claims of error pertaining to personal property. *See James*, 215 Ariz. 182, ¶ 11, 158 P.3d at 908 ("[W]here the appeal is not timely filed, the appellate court acquires no jurisdiction other than to dismiss the attempted appeal.").

## II. Order Directing Return of $940,000 in Stocks and Bonds

**¶11** Stuart contends the family court erred in ordering the return of certain securities to Susan because: (1) Susan's transfer of securities to him should have been classified as a gift; (2) the court lacked jurisdiction to order return of Susan's securities; and, (3) Stuart should not be required to reimburse the full value of Susan's securities.

**¶12** In February 2010, Susan transferred approximately $940,000 in stocks and bonds to Stuart. The parties presented conflicting testimony as to her motivation for the transfer, with Stuart contending it was a gift and Susan asserting it was made under duress. Whatever the motivation, Stuart prepared and Susan signed a document transferring $940,000 in securities from Susan to Stuart. Stuart also prepared an additional document, which he described as "like a proxy," that allowed Susan to repossess her transferred securities in case she had "buyer's remorse." Shortly after the initial securities transfer, Susan requested Stuart transfer back some dividend-bearing bonds and Stuart complied. Upon leaving the marital residence, Susan requested Stuart return the remaining stocks and bonds. The family court found that Susan's transfer of the securities to Stuart was not a gift and ordered Stuart to return the stocks and bonds to Susan, "less those sums or the value of such stock already returned to [Susan]."

## A.   Gift Determination

**¶13**         We first address Stuart's contention that the family court abused its discretion in finding that Susan's transfer of the stocks and bonds was not a gift because resolution of this issue informs our treatment of Stuart's subsequent arguments pertaining to Susan's securities.  Stuart contends, "[Susan] admitted that when she made the transfer she did so voluntarily and was not expecting repayment or anything in return for her . . . transfer of stock."  The determination of whether a gift was made is a question of fact. *Hrudka v. Hrudka*, 186 Ariz. 84, 92, 919 P.2d 179, 187 (App. 1995).  "We review a trial court's findings of fact for abuse of discretion and reverse only when clearly erroneous."  *In re Marriage of Gibbs*, 227 Ariz. 403, ¶ 6, 258 P.3d 221, 224 (App. 2011); *see also Engel*, 221 Ariz. 504, ¶ 21, 212 P.3d at 848.

**¶14**         The necessary elements of a gift are "donative intent, delivery and a vesting of irrevocable title upon such delivery." *Neely v. Neely*, 115 Ariz. 47, 51, 563 P.2d 302, 306 (App. 1977); *see also Hrudka*, 186 Ariz. at 93, 919 P.2d at 188.  In the instant case, the family court found the essential elements of a gift were not met.  The court concluded that even if it were to accept the existence of a donative intent, as alleged by Stuart, "irrevocable title clearly did not transfer as [was] apparent from [Stuart's] own preparation and provision of the authorization for [Susan] to demand the return of the $940,000 in stock had she wished to do so."  Thus, the court reasoned, "[t]here could not have been a vesting of irrevocable title where reserved to [Susan] was the authority and ability to negate the transfer."

**¶15**         Stuart concedes he "provided [Susan] with a proxy to obtain the return of her stocks and bonds" but contends the proxy only existed "in case she had buyer's remorse and wanted her property back soon after the transfer."  By Stuart's own admission, Susan had the ability to repossess the stocks and bonds through execution of the authorization prepared by Stuart.  Accordingly, irrevocable title could not have vested upon delivery and thus the family court did not err in concluding the transfer was not a gift.

## B. Family Court Authority

¶16        We next address Stuart's argument that the family court lacked subject matter jurisdiction to order return of Susan's stocks and bonds.  Whether a family court has jurisdiction is a question of law we review de novo.  *Thomas v. Thomas*, 220 Ariz. 290, ¶ 8, 205 P.3d 1137, 1139 (App. 2009); *Weaver v. Weaver*, 131 Ariz. 586, 587, 643 P.2d 499, 500 (1982) ("Title 25 defines the boundaries of a dissolution court's jurisdiction, and the court may not exceed its jurisdiction even when exercising its equitable powers.").

¶17        Stuart's argument depends, in part, on the assumption that the family court's subject matter jurisdiction is coterminous with its authority to act pursuant to A.R.S. §§ 25-311 and 25-318(A).[1] "In current usage, the phrase 'subject matter jurisdiction' refers to a court's statutory or constitutional power to hear and determine a particular type of case."  *State v. Maldonado*, 223 Ariz. 309, ¶ 14, 223 P.3d 653, 655 (2010); *see also United States v. Cotton*, 535 U.S. 625, 630 (2002).  We recognize that in *Weaver* our supreme court found a family court's "jurisdiction with respect to separate property is limited to assigning to each spouse his or her separate property under § 25-318(A) and impressing a lien pursuant to § 25-318(C)." 131 Ariz. at 587, 643 P.2d at 500.  But the court used the term "jurisdiction" in a broader, now antiquated, sense actually referring to courts' authority under the specific controlling statute rather than subject-matter jurisdiction.  *See Weaver*, 131 Ariz. at 588, 643 P.2d at 501 (Gordon, J., concurring) (spouse possessing separate property must sue at law under tort theory for physical damage to property); *cf. Sierra Tucson, Inc. v. Lee ex rel. Cnty. of Pima*, 230 Ariz. 255, n.2, 282 P.3d 1275, 1279 n.2 (App. 2012) (noting distinction between subject-matter jurisdiction and courts' authority to act, as acknowledged by supreme court), *citing Maldonado*, 223 Ariz. 309, ¶¶ 14-18, 223 P.3d at 655-56.  Because the family court had subject-matter jurisdiction to divide Stuart and Susan's marital property in a dissolution proceeding, we limit consideration of Stuart's argument to whether

---

[1]Section 25-318(A), A.R.S., states "the court shall assign each spouse's sole and separate property to such spouse."

it had the authority to order return of the securities pursuant to A.R.S. §§ 25-311 and 25-318(A).

**¶18**     Stuart correctly observes that our supreme court concluded in *Weaver* that a trial court lacks authority "to grant a money judgment against one spouse for damage to the separate property of the other spouse in a dissolution proceeding." 131 Ariz. at 587, 643 P.2d at 500. His reliance on *Weaver*, however, is misplaced because the trial court did not grant a money judgment against Stuart for damage to Susan's separate property. Rather, the court ordered "the return of the stock to Susan or, should the stock no longer be in the form and number of shares transferred, Stuart shall pay to Susan the sum of $940,000.00, less those sums or the value of such stock already returned to Susan."

**¶19**     This case is more like *Proffit v. Proffit*, 105 Ariz. 222, 462 P.2d 391 (1969). There, at the time of the parties' separation, wife had possession of husband's sole and separate property—United States savings bonds—and, without his permission, redeemed the bonds, and received $6,300. 105 Ariz. at 223, 462 P.2d at 392. In the decree of dissolution, the trial court "ordered and directed [wife] to deliver said sum to [husband]." *Id.* On appeal, wife argued the court "had no power to order [her] to pay a sum of money to [husband]." *Id.* at 224, 462 P.2d at 393. Our supreme court agreed that a dissolution court has "no authority to compel either party to divest himself or herself of Title to separate property" but concluded:

> [I]n the present case, the court's order did not concern Title, but Possession. [Wife] was in possession of a sum of money, obtained from the redemption of savings bonds, title to which had been adjudged in [husband]. The divorce court, as a court of equity, certainly has the inherent power to direct one party to relinquish possession of separate property belonging to the other, just as it has the power to order a division

and disposition of the community property
of two parties.

*Id.*

¶20 Stuart concedes "the trial court can award a sum of money to the other spouse if that sole and separate property wrongfully taken has been converted into cash." But he appears to contend that reductions in stock prices rendered Susan's securities "destr[oyed]," and that the court therefore did not have the authority to "award a sum of money as damages." We disagree with Stuart's contention that a decrease in market value can effectively destroy sole and separate property and thereby deprive the court of authority to order its return.

¶21 Here, as in *Proffit*, one spouse possessed the other spouse's separate property. *Id.* at 223, 462 P.2d at 392. As a court of equity, the family court had the power to direct Stuart to return Susan's sole and separate property, regardless of whether that property had declined in market value or changed forms. *See id.* at 224, 462 P.2d at 393; § 25-318(A) ("court shall assign each spouse's sole and separate property to such spouse"). Thus, the court had statutory authority to order the return of Susan's securities.

¶22 To the extent Stuart also suggests the court erred in awarding a money judgment to Susan, we conclude the issue is not ripe for review. During oral argument, the parties informed this court that the disputed securities portfolio is held in escrow and valued at more than $1,000,000. Stuart has failed to demonstrate an inability to comply with the court's order to return Susan's securities. Accordingly, we need not address his argument that the court improperly granted a money judgment to Susan.

## C. Return of the Value of the Securities

¶23 Stuart argues that even if the transfer of securities was not a gift and the family court did not exceed its authority in ordering their return, the court erred in "requiring him to return the full amount of $940,000." He notes that shortly after the initial

transfer of securities he returned certain bonds "worth about $45,000" and contends the court failed to deduct that amount.

¶24 Stuart mischaracterizes the family court's order. As noted above, the court ordered Stuart to return the securities to Susan, "*less those sums or the value of such stock already returned* to [Susan]." (Emphasis added.) It is clear that the court is referring to Stuart's return of certain dividend-bearing bonds. Thus, contrary to Stuart's argument, the court accounted for the bond transfers and did not err in ordering him to return Susan's securities.

## III. Real Property Distribution

¶25 Stuart argues the family court did not correctly allocate his contributions to the marital home, which was held in joint tenancy. Susan responds that Stuart is judicially estopped from contesting the marital property orders because the court adopted his proposed allocation framework; alternatively, she argues the court made an equitable distribution.

¶26 Stuart acknowledges that in the family court he advocated for a totaling of the monies each party had spent on the home, calculating the percentage contribution based on the totals, and allocating each party's interest based on the percentages. He contends on appeal that he should not be held to his family court position because he erred in aggregating his contributions and, in any event, the court did not accept his precise percentages. We conclude the doctrine of judicial estoppel bars Stuart from now asserting a different classification of his contributions to the marital home.

¶27 Judicial estoppel prevents "'a party who has assumed a particular position in a judicial proceeding . . . [from assuming] an inconsistent position in a subsequent proceeding involving the same parties and questions.'" *State v. Towery*, 186 Ariz. 168, 182, 920 P.2d 290, 304 (1996), *quoting Martin v. Wood*, 71 Ariz. 457, 459, 229 P.2d 710, 711-12 (1951). The purpose of the doctrine is to protect the integrity of the judicial process by preventing a litigant from using contrary positions in the courts to gain an unfair advantage over an opponent. *See Martin*, 71 Ariz. at 460, 229 P.2d at 712. Three

elements are required before the doctrine may be applied: "(1) the parties must be the same, (2) the question involved must be the same, and (3) the party asserting the inconsistent position must have been successful in the prior judicial proceeding." *Towery*, 186 Ariz. at 182, 920 P.2d at 304; *see also Standage Ventures, Inc. v. State*, 114 Ariz. 480, 483-84, 562 P.2d 360, 363-64 (1977) (essential element of judicial estoppel "is that the position first asserted must have been successfully maintained"). Although it usually applies in the context of separate actions, there is no restriction on its application involving differing positions at trial versus on appeal. *See Towery*, 186 Ariz. at 182, 920 P.2d at 304; *see also Pegram v. Herdich*, 530 U.S. 211, 228 n.8 (2000) (judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase"); *Dunn v. N.D. Dep't of Transp.*, 779 N.W.2d 628, 632 (N.D. 2010) (plaintiff judicially estopped from asserting legal position on appeal contrary to legal position resulting in earlier equitable relief); *BTA Oil Producers v. MDU Res. Group, Inc.*, 642 N.W.2d 873, 879 (N.D. 2002); 28 Am. Jur. 2d *Estoppel and Waiver*, § 67 (2014) ("Judicial estoppel is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with, conflicting with, or is contrary to one that he or she has previously asserted in the same or in a previous proceeding."). Acknowledging that the first two elements have been met, Stuart argues he was not successful in the family court. Resolving this issue requires us to review how the parties characterized their separate contributions to the marital home before the family court.

¶28        Stuart and Susan purchased land in Prescott using a $140,000 gift from Susan's mother to them. Although a small brick building was on the land, Stuart contributed separate funds to begin construction of the marital house. Susan contributed separate funds for a barn. Stuart exhausted his separate funds before the house was completed, which required the parties to take out a mortgage. Stuart used his sole and separate funds to pay a portion of the mortgage and Susan used her sole and separate funds to pay the remaining balance of the mortgage. Stuart and Susan also used separate funds to pay property taxes on the marital residence.

¶29        The parties stipulated to the present value of the former marital residence, but the amount was less than the total amount contributed toward the property.  In his closing brief before the family court, Stuart proposed that since "the real estate is not valuable enough to repay [him], . . . he should receive as reimbursement that proportion of the total value of the property which is [commensurate] with the portion of the total value for which his separate funds paid."  He calculated his and Susan's respective contributions as $805,000 and $290,000, or approximately 74 percent and 26 percent.[2]

¶30        The family court agreed with Stuart's proposed framework for reimbursement.  It found his contribution totaled 73.2 percent of the total monies invested in the marital residence and that Susan's contribution totaled 26.8 percent.  The one percent difference was attributable to minor contributions regarding wells and a brick outbuilding that Stuart did not address, but which the court included.

¶31        On appeal, Stuart argues the family court erred by: (1) including the mortgage payments "as part of the improvements paid calculation"; (2) applying "[Susan]'s percentage of the total improvements to the present value of the property, instead of to the increase in value of the property"; and, (3) failing to categorize Susan's mortgage payments as a gift to him.  Stuart does not present precise numbers or percentages that his position on appeal would require, but it appears he seeks to limit Susan's contributions to $98,000.

¶32        The family court also accepted Stuart's position with respect to allocation of the property taxes.  In his closing trial brief,

---

[2] Stuart's percentages asserted in his closing trial brief were 81.11 percent and 18.89 percent.  These did not match his asserted capital contributions—presumably as a result of mathematical error.  We also note that Stuart's calculations in his closing trial brief, opening brief, and reply brief were not internally consistent and, at least in one instance, he acknowledged "an obvious math error" of $72,500.

Stuart stated that "[t]he Court may credit [the property taxes] to the 'capital account' for the joint house property or . . . make those amounts a lien on the property." The court ordered that "[t]he percentage of real property taxes shall mirror the percentage of [capital] contribution" toward the marital residence, and granted Stuart "a lien against those monies owed by [Susan]." On appeal, he contends each party should have reimbursed the other so that each would ultimately contribute equally to the property tax obligation. Because Stuart paid $61,885 and Susan paid $8,000, this reformulation would require Susan to pay approximately $27,000 versus the $11,000 she was ordered to pay.

**¶33** Susan's proposed allocation in the family court differed substantially from Stuart's but the court accepted Stuart's allocation framework. To now accept Stuart's contention that the facts are not in dispute and this court may make calculations using the "proper rule of law" does not comport with how jointly held property is divided generally and it ignores the prejudice to Susan to make a new division on appeal. First, we note that property held in joint tenancy is to be divided substantially equally unless equitable considerations support an unequal distribution. § 25-318; *In re Marriage of Flower*, 223 Ariz. 531, ¶ 14, 225 P.3d 588, 592 (App. 2010). Here, at Stuart's urging, the court ordered an unequal division based on the parties' intent to maintain the "separate property character" of the contributions to the marital home, which originated in their prenuptial agreement. Nonetheless, the court concluded the agreement provided "no direction to the Parties or the Court" in regard to how the division should be made. Thus, the court was required to apply equitable considerations to determine the precise numbers. In this circumstance, there is no single rule of law based on undisputed facts; rather, the family court must take into account all of the facts relevant to an unequal division. *See Toth v. Toth*, 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997) (where equal is not equitable, court considers facts and circumstances to achieve fairness for both parties). This court cannot and will not substitute its judgment for a decision properly made in the family court. *See Kohler v. Kohler*, 211 Ariz. 106, ¶ 2, 118 P.3d 621, 622 (App. 2005) (division of marital property reviewed in light most favorable to upholding family court's ruling, which is not disturbed absent abuse of discretion).

¶34 Furthermore, although Stuart does not urge us to remand this matter to the family court if we find reversible error, we conclude it would unfairly prejudice Susan to permit Stuart to argue an inconsistent position on appeal when he successfully persuaded the court to adopt his position below. This would give him an unfair advantage the doctrine of judicial estoppel is designed to prevent. *See Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) ("'The doctrine of judicial estoppel . . . is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process.'"), *quoting Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989) (Hall, J. dissenting).

¶35 We also observe that Stuart's claim of error is vitiated by the doctrine of invited error. *See Schlecht v. Schiel*, 76 Ariz. 214, 220, 262 P.2d 252, 256 (1953) ("By the rule of invited error, one who deliberately leads the court to take certain action may not upon appeal assign that action as error."), *abrogated in part on other grounds as recognized in A Tumbling-T Ranches v. Paloma Inv. Ltd. P'ship*, 197 Ariz. 545, ¶ 23, 5 P.3d 259, 266 (App. 2000). As outlined above, Stuart proposed the method by which the family court determined the reimbursement calculation. He proposed that Stuart and Susan be credited for their respective contributions to the mortgage and allocated the property tax obligations as a percentage of each party's total capital contribution. Having successfully persuaded the court to follow this approach, he cannot now argue it was erroneous. *Wilkinson v. Phoenix Ry. Co. of Arizona*, 28 Ariz. 216, 222, 236 P. 704, 706 (1925) ("One who misconceives the law governing his rights in a trial, and succeeds in convicting the court thereof, ought to be estopped to take any advantage of it upon appeal."); *see also Sholes v. Fernando*, 228 Ariz. 455, ¶ 21, 268 P.3d 1112, 1119 (App. 2011).

## IV. $60,000 Loan from Susan to Stuart

¶36 Stuart lastly argues the family court erred when it determined that a loan of $60,000 from Susan to Stuart remained unpaid. As noted above, we will defer to the court's factual findings unless they are clearly erroneous. *Gibbs*, 227 Ariz. 403, ¶ 6, 258 P.3d at 224.

¶37         It is undisputed that Susan loaned Stuart $60,000 so that he could settle any future claims Stuart's former wife may have had against him.  Stuart and Susan subsequently filed a joint tax return, sharing in the tax deduction that resulted from Stuart's $60,000 pre-payment in spousal maintenance.

¶38         Stuart contends that he had satisfied the $60,000 loan obligation to Susan through his return of $40,000 in securities and "the tax benefit in excess of $24,000."   At trial, however, Stuart testified there was no agreement with Susan that his return of certain bonds was payment toward the loan.  Nor was there an agreement that any alleged tax benefit from the $60,000 spousal maintenance payment was part of a loan repayment.  There was sufficient evidence in the record to support the family court's finding that the $60,000 loan remained unpaid.  To the extent Stuart asks us to reweigh the evidence or determine credibility of witnesses, we decline to do so.  *See Brown v. U.S. Fidelity and Guar. Co.*, 194 Ariz. 85, ¶ 36, 977 P.2d 807, 814 (App. 1998).

## Disposition

¶39         For the foregoing reasons, the decree of dissolution is affirmed.  Both parties have requested attorney fees and costs on appeal pursuant to A.R.S. § 25-324.  In our discretion, we decline the requests for attorney fees and award Susan her costs on appeal.