NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

In re the Matter of:

JUDY KAY MOYER, *Petitioner/Appellee/Cross-Appellant*,

*v.*

ROBERT MOYER, *Respondent/Appellant/Cross-Appellee*.

No. 1 CA-CV 18-0703 FC
FILED 8-11-2020

Appeal from the Superior Court in Maricopa County
No. FN2015-005506
The Honorable Howard D. Sukenic, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

The Cavanagh Law Firm PA, Phoenix
By Philip C. Gerard, Helen R. Davis, Nicholas J. Brown
*Counsel for Petitioner/Appellee/Cross-Appellant*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Kristi A. Reardon
*Counsel for Respondent/Appellant/Cross-Appellee*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Jennifer M. Perkins joined.

---

**M O R S E**, Judge:

¶1 Robert Moyer ("Husband") and Judy Kay Moyer ("Wife") appeal and cross appeal from several rulings in the decree of dissolution. For the reasons stated below, we affirm the allocation of stock shares originally gifted to Wife but reverse the allocation of the shares Husband purchased during the marriage and remand for reconsideration. We affirm the orders allocating the bank accounts but reverse the awards of spousal maintenance and attorneys' fees and remand for reconsideration.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Throughout the marriage, Husband worked at Heritage Bank, a bank his family established in Nebraska. During the parties' 34-year marriage, Husband's parents gifted several shares of Heritage Group, Inc. ("HGI") stock to Husband and Wife individually.[1] This was part of an overall estate plan to gift the maximum amount allowed to each of the five Moyer siblings, spouses, and grandchildren. Then, to ensure that the five Moyer siblings received an equal amount of their parents' estate and to protect the stock in the event of divorce, each of the spouses transferred the shares back to the family trust, CONBA & Co.

¶3 At issue on appeal are four separate stock transfers Wife made to CONBA & Co. Ultimately, the family trust transferred these shares to Husband. The superior court awarded 1,111 shares to Wife as her separate property, finding clear and convincing evidence that Wife's transfer of those shares to the family trust was not knowing and voluntary because the

---

[1] Initially, the shares were in Aurora First National Company, but were later converted HGI shares, so we refer to them as HGI shares.

transfer document was blank when Wife signed them.  The court found the other three transfers were valid.

¶4	The parties also disputed the community or separate character of another 3,619 shares of HGI stock.  Husband claimed he purchased these shares during the marriage with funds from a separate property partnership, CBSMS.  The superior court found the community had an interest in a portion of CBSMS and thus found that a corresponding portion of the 3,619 shares were community property.

¶5	The superior court awarded Wife spousal maintenance in the amount of $7,000 per month for ten years.  The court equally divided a Heritage Bank account and declined to reimburse Husband for paying the parties' taxes.  The court ordered Wife to reimburse Husband for half of the funds she withdrew from community bank accounts prior to the petition being served.  The court also awarded attorneys' fees to Wife, finding a financial disparity.  After Husband objected to Wife's fee application, the court awarded Wife a portion of her total fee request based on the percentage of Wife's overall success.  Then the court awarded Wife attorneys' fees related to Husband's motion to set aside a portion of the decree.

¶6	Husband's appeal and Wife's cross appeal were timely, and we have jurisdiction under A.R.S. § 12-2101(A)(1) and (2).

## DISCUSSION

## I.	The Superior Court Properly Considered and Allocated the HGI Shares Originally Gifted to Wife.

¶7	Between 1987 and 1990, Husband's parents gifted a total of 3,741 HGI shares to Wife in four separate stock certificates.  The parties do not dispute that these were Wife's separate property.  *See* A.R.S. § 25-213(A) (separate property includes property acquired by gift during the marriage).  In four separate transactions between 1988 and 1990, Wife assigned these shares to CONBA & Co., which is the trustee of a Moyer family trust of which Husband is a beneficiary.  In 1992, the trust assigned these shares to Husband, as reflected in HGI stock certificate 193.

### A.	The Superior Court Had Statutory Authority to Allocate the Disputed Shares.

¶8	The superior court found that Wife knowingly and voluntarily transferred three stock certificates (numbers 125, 137, and 174),

because she signed the back of the stock certificates which showed what and to whom Wife was assigning her interest. The court found no fraud, coercion, or undue influence as to those three assignments. In contrast, the court found the assignment of 1,111 shares, represented by certificate 109, was not knowing and voluntary because Wife signed a blank assignment form and did not know what it purported to transfer.

¶9            Husband disputes the finding that 1,111 shares in certificate 109 remained Wife's separate property and Wife disputes the finding that the other three transfers were valid. We review the superior court's allocation of property for an abuse of discretion; however, the classification of property as separate or community is a question of law that we review de novo. *Bell-Kilbourn v. Bell-Kilbourn,* 216 Ariz. 521, 523, ¶ 4 (App. 2007).

¶10            Under A.R.S. § 25-318(A), the superior court has authority to divide community property and assign separate property to the appropriate spouse. Husband contends the court exceeded its statutory authority by considering the validity of this thirty-year-old transaction between Wife and a third party, *i.e.,* the family trust, negotiated by his brother, Sam Moyer ("Sam"). In ruling on Husband's motion to set aside, the court rejected this argument, finding it was contrary to the position Husband took at trial, which was that Wife gifted the shares to him. Because Husband argued in his joint pretrial statement (and somewhat obliquely at the close of trial) that Wife's claims against third parties were not properly before the court, we do not find waiver and will address this argument. Whether the court has statutory authority to address this dispute is a question of law we review de novo. *See In re Marriage of Thorn,* 235 Ariz. 216, 220, ¶ 16 (App. 2014).

¶11            Husband contends that the superior court cannot divest him of his separate property and can only assign each spouse's separate property to that spouse, citing *Proffit v. Proffit,* 105 Ariz. 222, 224 (1969). Husband correctly states the law; however, in arguing that the court exceeded its authority, he presumes that all the shares are, in fact, his separate property. Which spouse owned the shares was the disputed issue before the court. The court had the inherent ability to determine which spouse owned the property and to order the return of separate property to the appropriate spouse. In *Thorn,* the court affirmed the family court's determination that a spouse's transfer of stocks and bonds was not a gift. 235 Ariz. at 219-20, ¶¶ 13-15. Implicit in that holding is a determination that such a finding was within the family court's statutory authority. Although Husband contends *Thorn* is distinguishable because it involved a transaction between the spouses, the dispute over ownership here is also

between the spouses. We find the court had authority to consider which spouse owned the disputed HGI shares. *See id.*

### B. The Evidence Supports the Superior Court's Characterization of the Disputed Shares.

**¶12** Husband argues the superior court should not have applied the heightened standard applicable to transactions between spouses because Wife assigned her shares to a third-party, not Husband. We disagree. The "third party" in this transaction was a family trust of which Husband was a beneficiary. Sam testified that he asked Wife to make this *gift to Husband* through *Husband's trust* at CONBA & Co. The superior court correctly concluded that "any action by [Sam] . . . was solely as a conduit to guide those shares from Wife to Husband as the ultimate recipient." Therefore, this was not a true arms-length transaction with a third party, but part of an overall family estate plan to ensure that stock in a family bank stayed within the family. On these facts, the superior court properly treated this as a transaction between spouses.

**¶13** We agree with Husband, however, that the superior court improperly considered the transfer under the analysis applicable to postnuptial agreements discussed in *In re Harber's Estate,* 104 Ariz. 79, 88 (1969), and *Austin v. Austin,* 237 Ariz. 201, 208, ¶ 20 (App. 2015). "A postnuptial agreement is defined as '[a]n agreement entered into during marriage to define each spouse's property rights in the event of death or divorce.'" *Austin,* 237 Ariz. at 206-07, ¶ 14 (citing *Postnuptial Agreement,* Black's Law Dictionary (10th ed. 2014)). The transfer purported to be a gift and was not a postnuptial agreement. Therefore, the gift analysis in *Thorn,* 235 Ariz. at 220, ¶ 14, applies. Likewise, we need not address the parties' fiduciary duty arguments because "[g]ifts from a husband to his wife are . . . governed by the same rules as gifts between strangers." *O'Hair v. O'Hair,* 109 Ariz. 236, 239 (1973) (quoting *Rasmussen v. Oshkosh Sav. & Loan Ass'n*, 151 N.W.2d 730, 732 (Wis. 1967)). To that point, "[t]he necessary elements of a gift are 'donative intent, delivery and a vesting of irrevocable title upon such delivery.'" *Thorn,* 235 Ariz. at 220, ¶ 14 (quoting *Neely v. Neely,* 115 Ariz. 47, 51 (App. 1977)). Under Arizona law, a gift must be voluntary and intentional. *McNabb v. Fisher,* 38 Ariz. 288, 294 (1931). Whether a gift was made is a question of fact, and we affirm the superior court's factual findings absent clear error. *Thorn,* 235 Ariz. at 219, ¶ 13.

**¶14** The evidence supports the finding that Wife voluntarily transferred three of the four stock certificates to the trust for Husband's benefit. Sam told Wife that the Moyer family estate plan was to gift shares

to the Moyer siblings' spouses to maximize the gift tax exclusions and asked Wife to gift her shares to Husband's trust so that the shares would stay in the Moyer family, in the event of a divorce. Wife admitted that she signed all four stock assignments. Based on Wife's testimony, the assignment form relating to 1,111 shares in certificate 109 – the very first presented to Wife – was blank when she signed it and was not attached to the corresponding stock certificate. This supports the court's conclusion that Wife did not know what or to whom she was assigning. Other evidence provided that the subsequent three assignments were included on the back of the corresponding stock certificates and stated that the family trust was the recipient. Thus, Wife would have known what shares she was assigning to the trust when she signed the certificates 125, 137, and 174.

¶15        Wife claims she did not know what CONBA & Co. was so she did not know she was gifting these shares to Husband and, therefore, did not manifest the requisite "intent to give to the party claiming as donee[.]" *O'Hair*, 109 Ariz. at 239. However, Sam testified that he told Wife that Husband was a beneficiary of this trust. Wife's counsel acknowledged at oral argument that there was conflicting evidence on this issue. This court does not reweigh the evidence and, absent clear error, we must defer to the superior court's resolution of conflicts in evidence. *See supra* ¶ 14. Reasonable evidence supports the superior court's findings that Wife validly transferred 2,630 shares to a trust for Husband's benefit, and that Wife did not knowingly transfer 1,111 shares when she signed a blank stock assignment that was not attached to a stock certificate. Accordingly, we find no clear error and affirm the allocation of the 3,741 shares of HGI stock.

## II.    The Record Does Not Support the Superior Court's Allocation of the HGI Shares Purchased During the Marriage.

¶16        In 2000, Husband purchased 3,619 shares of HGI using funds from a CBSMS bank account. CBSMS was a partnership formed during the marriage by Husband and his four siblings. Wife argued that CBSMS was a community partnership because it was formed during the marriage; consequently, the shares purchased through CBSMS were also community property.

¶17        Property acquired during marriage is presumed to be community property, "and the spouse seeking to overcome the presumption has the burden of establishing the separate character of the property by clear and convincing evidence." *Cockrill v. Cockrill*, 124 Ariz. 50, 52 (1979). The superior court correctly found that CBSMS was presumptively community property because it was formed during the

marriage, and Husband had the burden of showing by clear and convincing evidence that it was his separate property.

¶18          The superior court further found that Husband established that his interest in the CBSMS partnership was his separate property. In reaching this conclusion, the court found clear and convincing evidence that CBSMS was initially funded solely from Husband's separate property. Wife contends the record does not support this conclusion. We review the court's allocation of property for an abuse of discretion; however, the classification of property as separate or community is a question of law that we review de novo. *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4.

¶19          Evidence supports the superior court's conclusion. The initial capital contribution to CBSMS consisted of $43,477 in property and cash given to the Moyer siblings from their grandmother. It was undisputed that Husband's CBSMS capital account included both separate and community funds. Husband contributed $127,500 from community funds to his CBSMS capital account in 1992. Husband's grandmother's estate also contributed $150,000 from a debenture, of which $30,000 was attributed to Husband's capital account. The latter contribution from his inheritance, therefore, consisted of Husband's separate property. A.R.S. § 25-213(A). CBSMS paid Husband a $77,500 distribution in 1993 but it does not appear that Husband received any other distributions.

¶20          Wife contends this comingling transmuted Husband's entire CBSMS interest into community property. The superior court found that Husband could trace the community funds in his separate property capital account and there was no transmutation. Because Husband was able to trace the separate and community funds, the entire capital account was not transmuted to community property. *See Cooper v. Cooper,* 130 Ariz. 257, 259-60 (1981) (when separate and community funds are commingled, the entire fund is presumed to be community property *unless the separate property can be explicitly traced* by clear and convincing evidence).

¶21          The evidence, however, does not support the superior court's conclusion that the $77,500 distribution resulted in the community having a $50,000 interest in CBSMS. The record does not show that the $77,500 distribution went entirely to repay the community contribution. The court did not cite and the parties do not direct us to anything in the record showing what Husband did with the $77,500 distribution. In response to questions at oral argument, Husband's counsel did not point to any evidence to that effect, only referencing the superior court's finding. Absent some evidence that these funds were deposited into a community account

or otherwise expended for the community's benefit, we cannot affirm the court's conclusion that the entire $77,500 should be considered repayment of the community contribution. Accordingly, we conditionally vacate the allocation of the 3,619 HGI shares and remand for the superior court to determine whether the $77,500 distribution was, in fact, repaid to the community. If it was repaid to the community, the superior court shall reinstate the allocation of the HGI shares.

**III.     In Deciding Spousal Maintenance, the Superior Court Erred by Failing to Consider the Income-Earning Potential of the Property Awarded to Wife but Properly Considered the Marital Standard of Living and Wife's Contributions to Husband's Income.**

¶22      In determining the amount and duration of spousal maintenance, courts must consider several statutory factors, including the marital standard of living, the receiving spouse's earning ability and ability to support herself, the receiving spouse's contribution to the other spouse's earning ability, and the financial resources of the receiving spouse. A.R.S. § 25-319(B)(1), (3), (5), (6), and (9). The superior court awarded Wife spousal maintenance of $7,000 per month for ten years. Husband does not dispute that Wife was entitled to spousal maintenance but contends the court erred in its consideration of several of the statutory factors. We review the award of spousal maintenance for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 348, ¶ 14 (App. 1998).

**A.     Marital Standard of Living.**

¶23      Husband contends the superior court erred in considering the marital standard of living because it relied on Wife's current expenses and did not consider how the parties lived during the entire 34-year marriage. *See* A.R.S. § 25-319(B)(1). We disagree with Husband's characterization of the court's findings.

¶24      The evidence supports the findings that the parties lived modestly in a small town in Nebraska, but after moving to a retirement community in Arizona in 2006, the marital standard of living increased overall. Although Wife claimed nearly $11,000 in expenses, the court rejected her increased expenses for dining out, clothing, and rent. The court based the award on Wife buying a modest house for cash instead of paying $4,250 in monthly rent for a luxury apartment. Thus, the court found these expenses did not reflect the marital standard of living and did not consider them. Although the court did not state what it found Wife's *reasonable* expenses to be, we find that deducting the rent alone would reduce Wife's

claimed expenses to approximately $6,700, based on the court's presumption that Wife would purchase a house and thus have no rent or mortgage expense.

### B. Wife's Contribution to Her Own Financial Needs.

**¶25** The superior court must consider the financial resources available to Wife and her ability to meet her needs independently. *See* A.R.S. § 25-319(B)(9). In doing so, the court must consider "all property capable of providing for the reasonable needs of the spouse seeking maintenance[,]" including "property presently producing income as well as property capable of producing income or otherwise transformed in order to provide for the reasonable needs of the spouse." *Deatherage v. Deatherage,* 140 Ariz. 317, 320 (App. 1984). Although *Deatherage* interpreted A.R.S. § 25-319(A) to determine if the spouse was entitled to support, we will apply the same definition of property to § 25-319(B). *See State ex rel. Larson v. Farley*, 106 Ariz. 119, 122 (1970) (noting courts construe statutes relating to the same subject together and seek to achieve consistency).

**¶26** Wife was awarded $809,902 in "liquid" assets in addition to "less liquid" assets consisting of 2,618.11 shares of HGI (valued at $555,929.47), an interest-bearing loan (Wife's share valued at $90,500), several certificates of deposit and bank accounts worth approximately $193,725, and a retirement account worth $1,814.50. The court assumed Wife would use $465,000 of the liquid assets to purchase a house, and, after investing the remainder of the liquid assets, she would have $1,500 in passive income "until she reached a retirement age whereby she could liquidate and utilize her less liquid assets."

**¶27** The decree and the parties did not indicate that the "less liquid" assets consisted of restricted retirement accounts (other than the Nebraska School Employee account); however, the joint pretrial statement refers to them as such. In any event, Wife, who was 60 at the time of trial, can take the interest earned on any such retirement accounts without depleting the principal or facing tax penalties, *see* 26 U.S.C. § 72(t). Yet the superior court did not consider any interest income from these assets. The superior court was within its discretion to find that Wife's HGI shares might take some time to liquidate and so did not abuse its discretion by deferring income from that asset for a reasonable time. But the court erred by failing to attribute some income earning potential to the other "less liquid" assets that could be presently generating interest income. *See Deatherage,* 140 Ariz. at 320.

¶28        Husband also contends the superior court failed to properly consider Wife's earning ability in determining spousal maintenance. *See* A.R.S. § 25-319(B)(3), (5), and (9). Husband presented a vocational expert report indicating that Wife had the ability to earn an annual salary of $20,000 to $30,000 and Husband could earn $50,000 to $65,000. The court, however, did not attribute any income from employment to either Husband or Wife, finding they both reasonably chose not to work. Husband argues the court erred by failing to attribute income from employment to Wife.

¶29        When "determining whether to use actual income or earning capacity to calculate spousal maintenance when voluntary reduction of income issues are raised[,]" courts should consider the following factors:

> (1) The reasons asserted by the party whose conduct is at issue; (2) The impact upon the obligee of considering the actual earnings of the obligor; (3) When the obligee's conduct is at issue, the impact upon the obligor of considering the actual earnings of the obligee and thereby reducing the obligor's financial contribution to the support order at issue; (4) Whether the party complaining of a voluntary reduction in income acquiesced in the conduct of the other party; and (5) The timing of the action in question in relation to the entering of a decree or the execution of a written agreement between the parties.

*Pullen v. Pullen,* 223 Ariz. 293, 297-98, ¶¶ 15, 18 (App. 2009). The court did not expressly consider these factors, but the evidence supports the decision not to impute income to either spouse.

¶30        Wife had not worked since 2005. Husband contends he retired due to health concerns and could otherwise support himself with his separate property assets. There was, however, no evidence that Husband had health issues that would preclude employment. Imputing income would increase Wife's income by $2,083, assuming she could earn an annual income of $25,000, and increase Husband's income by $4,583 per month. Neither party had worked in the recent past, and there was no evidence suggesting that the timing of the retirement was related to the divorce or that either party retired over the objection of the other. After considering the *Pullen* factors, we find the superior court did not err in failing to impute income to either party.

C.      **Wife's Contribution to Husband's Earning Ability.**

¶31      The superior court gave no "substantial weight" to the fact that Wife maintained the household so that Husband could further his career. A.R.S. § 25-319(B)(6). Husband argues his current earning ability is a result of his substantial separate property assets and that the court failed to consider that Wife did not contribute to his current earning ability. Because the court did not give significant weight to this factor, we fail to see how Husband was prejudiced. There is no authority for finding that Husband should pay less spousal maintenance simply because his wealth consists of separate property.

¶32      Finally, contrary to Husband's claim regarding his earning ability, the evidence showed that Husband will receive more monthly social security benefits ($2,505) than Wife ($612) in the future.

¶33      We reverse the award of spousal maintenance and remand for the court to reconsider the income potential of the "less liquid" assets in determining how much support Wife needs to meet her reasonable needs.

**IV.    The Superior Court Did Not Err in Allocating Heritage Bank Account.**

¶34      The superior court equally divided Heritage Bank account 7942 as of the date of service. The court also denied Husband's claim that he should be reimbursed for paying the parties' 2015 and 2016 tax obligations on the grounds that Husband did not show that he paid this debt with his separate property. Husband argues these rulings are inequitable because he paid the parties' tax obligations from Heritage Bank account 7942 after the date of service. We review the court's allocation of property for an abuse of discretion. *Bell-Kilbourn*, 216 Ariz. at 523, ¶ 4.

¶35      Husband raised the issue of the tax payments in the joint pretrial statement and at trial. Thus we reject Wife's contention that Husband waived this argument. Nevertheless, the record supports the court's ruling. At trial, Husband testified that he paid the community's 2014 and 2015[2] tax obligation from the Heritage Bank Wall Street account, but he could not recall the source of the funds in that account. Absent evidence that the funds in the Heritage Bank Wall Street account were Husband's

_____

[2]      There is a discrepancy in the years at issue. The pretrial statement and decree refer to 2015 and 2016, but the trial testimony and Husband's briefs refer to 2014 and 2015. Given our resolution, the discrepancy is irrelevant.

separate property, the superior court did not abuse its discretion by denying Husband's reimbursement claim. We affirm the allocation of Heritage Bank account 7942.

## V. The Evidence Supports the Reimbursement Order for Wife's Withdrawals from the Community Wells Fargo Accounts.

¶36 The superior court found Wife withdrew a total of $199,999.96 from two joint Wells Fargo bank accounts between May 2014 and the filing of the petition in November 2015. The court ordered Wife to reimburse Husband $99,499.98, rejecting Wife's claim that she used these funds for ordinary living expenses and attorneys' fees until the court ordered temporary spousal maintenance in December 2016. Wife contends the court's findings are contrary to the evidence. We will uphold the community property allocation absent an abuse of discretion. *Gutierrez,* 193 Ariz. at 346, ¶ 5. We view the evidence in the light most favorable to upholding the court's findings and do not reweigh conflicting evidence or determine the credibility of witnesses. *Id.* at 346, 347, ¶¶ 5, 13.

¶37 When apportioning community property, the superior court has authority to consider a spouse's excessive or abnormal expenditures or concealment of community property. A.R.S. § 25-318(C). A spouse alleging waste has the burden to make a prima facie showing of waste. *Gutierrez,* 193 Ariz. at 346, ¶ 7. If a prima facie showing is made, the burden shifts to the spending spouse to show the expenditures were reasonable. *Id.*

¶38 Wife admitted to withdrawing approximately $199,000 from community accounts and placing those funds into an account to which Husband had no access. Thus, Husband made a prima facie case of waste, and the burden shifted to Wife to show how she spent the money. *Id.*

¶39 Wife testified that she withdrew the funds because Husband threatened to leave her with nothing and that she spent the money on living expenses and attorneys' fees. Without citing any evidence, Wife argues on appeal that Husband was not contributing to her support at that time because they were living apart. There was no evidence that Wife could not continue to use the community accounts for living expenses before the petition was filed or that Husband denied her access to the funds at any time. In fact, Husband offered bank statements showing that the joint checking account continued to pay Wife's credit card expenses *after* she withdrew half of the funds from one account on October 30, 2015. Wife did not offer evidence to support her testimony that she spent these funds on reasonable living expenses due to a lack of access to community funds.

Thus, we affirm the finding that Wife failed to show her withdrawal of community funds was reasonable. *See Aries v. Palmer Johnson, Inc.*, 153 Ariz. 250, 261 (App. 1987) (noting courts are not bound to accept as true the uncontradicted testimony of an interested party).

¶40 Wife also argues the superior court erred in concluding she unreasonably withdrew funds to pay her attorneys' fees because the court had previously entered an interim order awarding fees to Wife. Wife contends the prior fee award was a sanction and should not be factored into the waste determination. Because Wife does not cite to any evidence that she used the withdrawn community funds to pay her attorney as she claimed, the reimbursement order does not negate the impact of the sanction. Therefore, we cannot say the court abused its discretion in finding Wife's withdrawal of community funds was unreasonable. We affirm the order that Wife shall repay Husband for his share of those funds.

## VI. The Superior Court Applied an Incorrect Legal Standard in Awarding Wife's Attorneys' Fees.

¶41 The superior court found Wife was entitled to an award of attorneys' fees based on the substantial disparity in financial resources favoring Husband and the fact that neither party was unreasonable. After Husband objected to Wife's fee application, the court awarded Wife less than half of the fees she requested. In determining the amount of the fee award, the court took the total fee amount ($266,433.50) and divided it by the seven "categories over the course of litigation requiring significant attention by the court[.]" For each of the seven categories, the court awarded Wife a "percentage" of the fees based on her success regarding that issue.

¶42 We review an award of attorneys' fees for an abuse of discretion. *Gutierrez,* 193 Ariz. at 351, ¶ 32. The superior court abuses its discretion when it commits a legal error in making a discretionary decision. *In re Marriage of Williams,* 219 Ariz. 546, 548, ¶ 8 (App. 2008). Husband argues the court erred by applying a prevailing party standard in awarding attorneys' fees to Wife. Wife contends the award was based on the disparity of financial resources.

¶43 Section 25-324 "does not establish a prevailing party standard for awarding fees and costs." *Breitbart-Napp v. Napp,* 216 Ariz. 74, 84, ¶ 39 (App. 2007). An award of fees under § 25-324 is based on financial disparity and the reasonableness of the parties' positions. Although the court properly found that Wife qualified for an award of attorneys' fees based on

the disparity of financial resources and the reasonableness of her positions, the degree of Wife's success was irrelevant in determining the appropriate amount of the fee award. *See Bobrow v. Bobrow,* 241 Ariz. 592, 599, ¶ 31 (App. 2017) (finding A.R.S. § 25-324 "allow[s] a spouse with limited resources to advance a legitimate though ultimately unsuccessful claim without being financially intimidated"). Accordingly, we reverse the award of attorneys' fees and remand for reconsideration.

¶44 The superior court also awarded Wife $14,093.60 in fees related to Husband's motion to set aside the decree. The court awarded fees based on the substantial financial disparity. Husband argues the court abused its discretion because it lacked updated financial information; therefore, there was no basis for finding Husband had superior financial resources. Wife contends the court had sufficiently recent information about the parties' finances and the parties were not required to file a new financial affidavit to support an award of fees based on the financial disparity.

¶45 The superior court ruled on the attorneys' fees related to Husband's motion to set aside nearly one year after the decree. We do not decide whether Arizona Rule of Family Law 91.6 required the parties to submit updated financial affidavits because we have reversed other rulings that, upon reconsideration, may impact the parties' financial resources. Therefore, we order the superior court to also reconsider the award of attorneys' fees related to Husband's motion to set aside. On remand, the parties shall provide updated financial affidavits relating to the time periods relevant to any fee request.

## VII. Attorneys' Fees on Appeal.

¶46 Husband clams he is entitled to attorneys' fees and costs on appeal based on Wife's unreasonable positions. Wife bases her fee request on the significant financial disparity. *See* A.R.S. § 25-324. Neither party took unreasonable positions on appeal and we lack current financial affidavits to determine the extent of any financial disparity. Because we are remanding for resolution of other issues that may affect the parties' financial resources, we leave the issue of attorneys' fees and costs on appeal to the superior court's discretion upon final disposition of the case.

## CONCLUSION

¶47 We affirm the allocation of HGI shares originally gifted to Wife during the marriage and the allocation of the bank accounts. We reverse and remand for reconsideration of the allocation of the HGI shares

Husband purchased during the marriage, the award of spousal maintenance, and the award of attorneys' fees. The superior court shall determine whether either party is entitled to an award of attorneys' fees and costs on appeal after receiving updated financial affidavits.



AMY M. WOOD • Clerk of the Court
FILED:   AA