NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

NASTARAN BARARI, *Petitioner/Appellant*,

*v.*

KEMMY D. BURGESS, *Respondent/Appellee*.

No. 1 CA-CV 25-0815 FC

FILED 06-26-2026

Appeal from the Superior Court in Maricopa County
No. FC2023-051806
The Honorable James Knapp, Judge

**AFFIRMED**

COUNSEL

Nastaran Barari, Avondale
*Petitioner/Appellant*

Kemmy D. Burgess, Avondale
*Respondent/Appellee*

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

**F U R U Y A**, Judge:

¶1        Nastaran Barari ("Mother") appeals the superior court's decree of dissolution of her marriage to Kemmy D. Burgess ("Father"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother and Father married in December 2014 and have two children in common. Nine years later, the spouses separated. Mother filed a Petition for Dissolution of Marriage. Throughout the divorce, Mother and Father heavily litigated Father's financial disclosures.

¶3        Following two years of litigation, the court issued a Decree for Dissolution of Marriage in March 2025, resolving parenting time, child support issues, legal decision-making for the children, and requests for sanctions and attorneys' fees. Mother did not appeal the Decree. But, she then filed various motions to compel disclosure of Father's finances, for authorization of the children's passports, to modify the Decree, and to enforce parenting time, all of which were denied. Relevant here, Mother appeals an order denying her request to modify the Decree.[1]

---

[1]        Mother also requested that we vacate and remand the property division provisions of the Decree, as well as the child-support order. Under Arizona Rule of Civil Appellate Procedure ("ARCAP") 9(a), a notice of appeal must be filed within "30 days after entry of the judgment from which the appeal is taken[.]" "The failure to file a notice within thirty days deprives the appellate court of jurisdiction except to dismiss the attempted appeal." *In re Marriage of Thorn*, 235 Ariz. 216, 218 ¶ 5 (App. 2014). The Decree was entered in March 2025 and Mother filed her notice of appeal in September 2025, more than thirty days after entry. To the extent Mother requests we revisit any provision of the Decree itself, we lack jurisdiction to do so. *Id.*

**DISCUSSION**

¶4        Mother's opening brief makes various arguments regarding her "procedural and substantive due process rights" and the court's "improper" weighing of evidence. But her brief is deficient.

¶5        To comply with ARCAP 13, an appellant's opening brief requires, among other things, a statement of the background of facts, the issues presented on appeal, and an "argument" containing the appellant's contentions. ARCAP 13(a)(5)–(7). That argument must include citations to supporting legal authorities, references to the record, and a statement of the appropriate standard of review. ARCAP 13(a)(7)(A)–(B). "An appellant who fails to make a bona fide and reasonably intelligent effort to comply with the rules will waive issues and arguments not supported by adequate explanation, citations to the record, or authority." *Ramos v. Nichols*, 252 Ariz. 519, 522 ¶ 8 (App. 2022) (citation modified).

¶6        Mother failed to comply with these requirements. First, her brief provides no citation to the record on appeal. Second, the brief also contains case citations that were inaccurate, false, and misleading, a common issue when parties utilize generative artificial intelligence in drafting without reviewing its outputs for accuracy. Of the fifty-two citations in her brief, twenty-four are deficient. Mother's citation errors include her use of cases for principles not supported by the case, misstatements of rules enunciated in cases, and misrepresentations of case facts and holdings. Most concerning, Mother cites a case that simply does not exist, commonly known as a "hallucinated" case. These errors are consistent with abuse of generative artificial intelligence, and constitute misrepresentations of the law to the court, which we will not tolerate.

¶7        Upon reviewing the deficient citations in her brief, we ordered Mother to appear at a show-cause hearing and testify under oath as to her use of inappropriate citations. We also permitted Mother to submit a written explanation for the troublesome citations, which she filed. However, in neither her written explanation nor at her show-cause hearing did she admit using generative artificial intelligence in her legal research. Instead, Mother insisted she wrote the brief herself and personally conducted all legal research, only to later admit that she did use generative artificial intelligence, but only minimally. She acknowledged the false citations were a mistake but had no coherent explanation for how that mistake occurred.

¶8          Mother's answers to questions about the numerous, substantial citation errors were evasive, evolving, and inconsistent. When asked to explain the false citations, she testified she performed all legal research using Westlaw at a law library and checked all citations herself. But about half of these citations were false. And despite her asserted diligence and use of a commercial legal research database, she still cited a hallucinated case, which she explained as an inadvertent mis-citation to another case name. But the case which she claims to have intended also does not stand for the proposition she asserted, was unreported, and used different — albeit similar — names. Mistaking an unreported decision for a differently named and reported opinion is not a common or likely error when exercising the caution and diligence Mother stated she used. But combination of case names with unrelated reporters and pin citations is commonly encountered in legal materials drafted using generative artificial intelligence. For this reason, we find Mother's insistence that she did not use generative artificial intelligence for legal research not credible, and reject her implausible explanations for her many citation errors.

¶9          After reviewing Mother's brief, the record, and considering and rejecting as noncredible her implausible explanations, we find Mother's submission of false citations warrants sanctions under ARCAP 25. *See Ramos*, 252 Ariz. at 523 ¶ 12 (stating an appellate court may sanction a party for violating ARCAP and these "[s]anctions must be appropriate to 'the circumstances of the case' and are meant to 'discourage similar conduct in the future.'").

¶10         While Mother moved to amend her opening brief at the show-cause hearing, we deny Mother's motion to amend and strike each inaccurate and false legal citation at issue as a sanction. The false citations aside, the opening brief lacks sufficient supportive legal authority for Mother's arguments. We also disregard all facts stated in her brief that are unsupported by citations to the record. *See* ARCAP 13(a)(5), (7). We will not scour the record for relevant facts or legal authorities to develop Mother's argument for her. *See State v. Brown*, 124 Ariz. 97, 100 (1979) ("A judge must be careful never to act in the dual capacity of judge and advocate."). Mother's arguments thus lack any support.

**¶11** Mother has not made a "bona fide and reasonably intelligent effort" to comply with ARCAP 13's requirements. *Ramos*, 252 Ariz. at 522 ¶ 8. We therefore deem her arguments waived. *See id.* at 523 ¶¶ 10–13; *see also* ARCAP 25 (permitting appellate court to impose sanctions for violating the ARCAP).

## CONCLUSION

**¶12** We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**: JR